**Michael KILLOUGH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 200–85.**

Court of Criminal Appeals of Texas, En Banc.

June 25, 1986.

Jack R. Stern, Sugar Land, for appellant.

William A. Meitzen, Dist. Atty., & Terry Breen, Asst. Dist. Atty., Richmond, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

Appellant was convicted of aggravated robbery and his punishment assessed by the jury at twenty years' confinement. The conviction was affirmed by the Hous-

ton (1st) Court of Appeals, which held, *inter alia,* that the evidence was sufficient to corroborate the testimony of an accomplice witness who testified for the State. *Killough v. State,* 684 S.W.2d 220 (Tex.App.— Houston [1st] 1984). We granted appellant's petition to review this holding of the court of appeals.

Jackie Ham, the accomplice witness, testified that on the night of December 4, 1983, he was at the home of his friend Barry Lyle. Also present were appellant, appellant's wife, and Barry Lyle's wife. Later that night the three men left and drove in appellant's blue Ford pickup truck to the Z–Bar, a lounge in Fort Bend County. Appellant carried a handgun and gave Ham a .38 revolver that appellant had stolen from a woman at an automatic teller machine, "[w]here you deposit money at night." Barry Lyle, who was driving, stayed in the truck while Ham went in the back door of the bar and appellant went in the front. Ham's face was uncovered, but appellant wore a stocking over his head. After appellant fired a shot into the ceiling of the bar and told the patrons to lie on the floor, Ham began taking their wallets.

In the meantime, according to Ham's testimony, appellant was taking bills off a "money tree" that was set up for Christmas. He also took cash from the cash register. When he had done so and Ham had collected five or six wallets they ran out the front door of the bar and into the truck. Barry Lyle drove them away. When they got on the highway, however, they noticed someone following them. Ham fired at their pursuer but failed to discourage him. Eventually the robbers drove into a dead end street, where the driver following them ran into them head-on. Ham, Lyle, and appellant separated and ran away. Ham was not carrying any of the money from the robbery and he had lost his gun in the collision. He hid until the next morning, when he walked to appellant's apartment. A few minutes later appellant arrived with Barry Lyle's wife. Appellant was injured from the wreck, his "ribs were busted up." Ham went with

appellant and his wife to Beaumont, where they checked into a Best Western motel and appellant's wife took him to a doctor. Appellant later told Ham that he had told the doctor he received his injuries in a motorcycle wreck.

Cross-examination revealed that Ham had previously been convicted of attempted capital murder, receiving stolen property, and "[s]everal" theft charges. In exchange for his testimony he had received a plea bargain of ten years, to run concurrently with another sentence he had to serve in Florida. This had not induced him to change his story, however. He denied having told a different version of the robbery to his cellmates before receiving his plea bargain.

The jury was instructed that Jackie Ham was an accomplice, and that therefore appellant could not be convicted on the basis of his testimony unless that testimony was "corroborated by other evidence tending to connect the defendant with the offense charged, and the corroboration is not sufficient if it merely shows the commission of an offense, but it must tend to connect the defendant with its commission." This is an accurate statement of the rule of Article 38.14, V.A.C.C.P. Appellant now contends the other evidence adduced at trial failed to connect him to the offense.

■ The corroborative evidence need not directly link the accused to the crime or be sufficient in itself to establish guilt. *Thompson v. State,* 691 S.W.2d 627, 631 (Tex.Cr.App.1984); *Brown v. State,* 672 S.W.2d 487 (Tex.Cr.App.1984). The test to determine the sufficiency of the corroboration is to eliminate from consideration the testimony of the accomplice witness and then examine the testimony of the other witnesses to ascertain if there is evidence which tends to connect the accused with the commission of the offense. *Cruz v. State,* 690 S.W.2d 246, 250 (Tex.Cr.App. 1985); *Brown,* supra.

Patty Lyle, wife of Barry Lyle, testified that appellant, Ham, and her husband Barry had been together in her home the night of the robbery. Patty and appellant's wife left for a while and when Patty returned

the men were gone. She knew that appellant drove a blue Ford pickup truck; her husband Barry didn't own a vehicle.

Barry was gone all night. The next morning Patty received a phone call from appellant. He first asked if Barry was home, then asked Patty to come pick him up because "they" had had a wreck and he needed a ride home. Patty picked him up at a convenience store near his apartment. Appellant was in pain, bleeding and "bent over." He complained of a pain in his side, and said the men had been in a head-on collision. Patty and appellant drove around for a few minutes looking for Barry. She said she needed gas and appellant gave her two dollars. He took "a wad of money out of his pocket," but Patty didn't know how much money it was. She took appellant home to his apartment and found Jackie Ham already there, bleeding from a cut on his head.

Officer Thomas Castill, of the Fort Bend County Sheriff's Department, testified that he investigated the scene of the head-on collision between the two trucks the night of the robbery. At about seven o'clock the next morning he arrested a suspect in the general vicinity of the wreck. The suspect was Barry Lyle. As far as the officer recalled, Lyle had no money on him at the time of his arrest.

Through Officer Larry Spillers, another sheriff's deputy, the State introduced photos of the two trucks involved in the head-on collision. One, a 1978 Ford, bore license plate number SJ 6079. Also found at the scene of the collision were two handguns, one of them a .38 revolver.

The State introduced a lease application signed by Denise Killough, appellant's wife. In the blank following "List all vehicles to be parked on the premises by applicant [or] spouse" was written "Ford Truck, '78, SJ 6079."

Robert Maines was a patron of the Z–Bar the night of the robbery. He testified that when the two robbers left the bar he ran outside and followed them in his pickup truck. He was certain the truck he fol-

lowed was the one in which the robbers fled. He saw three "figures" inside the truck but couldn't identify any of them. He followed the truck into a residential area and then into a cul-de-sac. When the robbers tried to drive back out he "just ran into them." The robbers fled and he followed one of them until he realized the better part of valor was to stop and call police. Finally, he identified one truck in a photograph of the scene of the wreck as his and the other, with license plate SJ 6079, as the one he followed from the Z–Bar and finally rammed.

Patsy Lamar, another State's witness, worked at a restaurant near Fort Bend County. After midnight some two months before the robbery of the Z–Bar patrons she was making a bank deposit in an automatic teller machine. Before she could complete the transaction a man threatened her with a gun and stole the money and her car. He also stole the .38 revolver she carried for protection. Shown the .38 revolver that had been found at the scene of the headon collision following the Z–Bar robbery, she said, "It looks like my gun." In court she identified appellant as the man who had robbed her.[1]

Craig Brady, an investigator for the Sheriff's Department, testified that Denise Killough, appellant's wife, had registered at a motel near Beaumont on December 5th, the day after the robbery. The manager had told Brady that Mrs. Killough was accompanied by two men.

Dr. Rogelio Mendoza testified that he practiced medicine in Fannett, a suburb of Beaumont. On December 5th he treated a man who identified himself as "Larry Baker." The man told Dr. Mendoza that he had been in a motorcycle accident, and an X-ray revealed that he had fractured ribs. Dr. Mendoza identified appellant as this man who had called himself Larry Baker.

The defense put on three jail inmates who testified that Jackie Ham had told them, before he made a plea bargain agree-

ment, that appellant had not been involved in the robbery. The defense also recalled Marcia Zimmerman, the owner of the Z–Bar, who stated again that the robber wearing a stocking over his head had been not appellant but Barry Lyle. She had thought appellant was the robber who came in the back door. "I thought I heard him on the floor when I was laying down at my place."

■ The question of whether the evidence is sufficient to corroborate an accomplice witness's testimony must be decided on the facts of each case. "Sufficient corroboration of the testimony of an accomplice to warrant a conviction may be furnished by the suspicious conduct of a defendant such as flight after a crime was committed." *Passmore v. State*, 617 S.W.2d 682, 684–85 (Tex.Cr.App.1981). The presence of the accused in the company of the accomplice near the time of the offense, while alone not conclusive, may also be considered. *Id.; Brown*, supra.

■ In the instant case the corroborating evidence shows that appellant was with Ham and Lyle shortly before the robbery. Three men fled the scene followed by a patron who finally disabled their truck, a truck appellant's wife had claimed on a lease application. The next morning appellant said he had been in a head-on collision and had sustained injuries to his ribs. He had a wad of money. When Mrs. Lyle took him home Jackie Ham, also injured, was waiting. Patsy Lamar identified appellant as the robber who had stolen from her a gun that "looked like" the gun Ham claimed appellant had stolen and given to him. The gun was found at the scene of the wreck. Appellant's wife registered at a motel near Beaumont and was seen with two men. Ham had said he travelled with appellant and his wife to Beaumont. Finally, appellant sought medical attention for his fractured ribs, giving a false name to the doctor.

---

1. On cross-examination she admitted that she had previously identified the robber as the unseen but nonetheless ubiquitous Barry Lyle. On redirect, however, she affirmed her certainty that appellant was the actual robber. "Because I looked into his eyes. I know him."

We find this evidence sufficient to corroborate the testimony of the accomplice witness. Ham's testimony concerned events covering a span of two days and was corroborated at nearly every point except during the offense itself. Appellant was linked to the truck used in the commission of the robbery, and three men were seen fleeing in the truck. The three were involved in a headon collision, and the following day appellant had injuries compatible with such an accident. When seeking treatment for those injuries he did so under a false name. It was a rational inference that even if appellant was not one of the robbers inside the Z–Bar he was the third man waiting in the truck outside.[2] The truthfulness of the accomplice testimony was called into question by the defense witnesses, but that was a dispute for the jury to resolve. They resolved it unfavorably to appellant. There is ample evidence to support the jury's verdict.

The judgment of the court of appeals is affirmed.

TEAGUE, J., dissents.

---

2. The jury was properly charged on the law of parties.