Eleno NAVEJAR, Appellant,

v.

The STATE of Texas, Appellee.

No. 13-87-217-CR.

Court of Appeals of Texas,
Corpus Christi.

Nov. 3, 1988.

David R. Gutierrez, Corpus Christi, for appellant.

Grant Jones, Dist. Atty., Corpus Christi, for appellee.

Before NYE, C.J., and SEERDEN, and DORSEY, JJ.

OPINION

SEERDEN, Justice.

A jury convicted appellant of aggravated delivery of heroin by actual transfer, and the trial court sentenced him to 20 years' imprisonment. We sustain appellant's challenge to the sufficiency of the evidence to corroborate the accomplice witness's testimony, and order his acquittal.

By his first of three points of error, appellant claims the evidence is insufficient

to support the judgment since the State failed to present sufficient evidence to corroborate the testimony of the accomplice witness.

Under Tex.Code Crim.Proc.Ann. art. 38.-14 (Vernon 1979), an accomplice witness' testimony alone cannot support an accused's conviction. There must be other evidence tending to connect the defendant with the offense committed, and the corroboration is not sufficient if it merely shows the commission of the offense.

■ An accomplice witness is someone who has participated with another before, during or after the commission of the crime. *Villarreal v. State,* 708 S.W.2d 845, 847 (Tex.Crim.App.1986). The test to determine the sufficiency of the corroboration is to eliminate from consideration the testimony of the accomplice witness and then examine the testimony of the other witnesses to ascertain if there is evidence which tends to connect the accused with the commission of the offense. *Reed v. State,* 744 S.W.2d 112, 125 (Tex.Crim.App. 1986). *Killough v. State,* 718 S.W.2d 708, 710 (Tex.Crim.App.1986). The corroboration evidence need not directly link the accused to the crime or be sufficient in itself to establish guilt. *Reed,* 744 S.W.2d at 126. An accused's presence at the crime scene is not alone sufficient to support a conviction, although it is a circumstance to be considered in tending to prove guilt. *Killough,* 718 S.W.2d at 711.

■ A reviewing court should consider all the facts and circumstances in evidence to furnish the necessary corroboration, which may be circumstantial or direct. *Reed,* 744 S.W.2d at 126; *Granger v. State,* 683 S.W.2d 387, 392 (Tex.Crim.App.1984).

■ Viewed in the light most favorable to the jury's verdict, the evidence showed that on September 23, 1986, Corpus Christi police officer Ralph Gomez and a number of other officers had set up a narcotics purchase with Juan Zamora. This transaction was to have concluded in apartment 207 at the Racquet Club Apartments in Corpus Christi, Nueces County, Texas. Zamora testified he had known appellant for many years, and that he contacted appellant and told him Zamora's bosses wanted to buy some heroin. Appellant furnished the heroin and offered to pay Zamora $1,500.00 to deliver some, as appellant was on probation. However, appellant did not trust Zamora, so appellant and another person, George Gonzales, followed Zamora to the Racquet Club Apartments with appellant driving his car. Zamora, with the heroin, drove to the apartments alone. Zamora went to the apartment alone to complete the heroin sale, and police officer Gomez arrested him. There is no dispute that Zamora's testimony was that of an accomplice witness and, as heretofore stated, there must be other evidence tending to connect the defendant with the offense committed.

In an effort to meet its burden, the State offered the testimony of five police officers who were involved in the drug bust. Summarizing their testimony in the light most favorable to the State, this evidence showed that a vehicle being driven by appellant, in which George Gonzales was a passenger, entered the Racquet Club parking lot immediately behind Zamora's car. Ultimately, appellant parked his vehicle next to Zamora's car. Gonzales got out of appellant's vehicle and looked into Zamora's car. When the officer who arrested him approached (the evidence indicates that none of the police officers were in uniform) he tried to run but was caught. He yelled, "The guy in the car is the guy, he is getting away," or words of similar import. Later, after appellant was in custody, but all of the parties were still in the parking lot, Gonzales said, "That's the guy, his name is Leno. That's the guy right there."

From the time his vehicle stopped in the parking lot, and throughout the arrest or "bust," appellant remained seated in the driver's seat of his vehicle, and made no furtive or unusual gestures or movements. There was no evidence that any of the officers, or anyone else (other than the accomplice Zamora) ever saw appellant in possession of the drugs. When arrested, appellant had $610.00 cash in his possession. There was testimony that it was unusual for someone living in "govern-

ment" apartments, as appellant did, to be in possession of that much money.

Appellant took the stand in his own behalf. He stated the money in his possession was the remainder of some insurance proceeds he received. He stated that Gonzales had come to his house on the evening of the arrest and asked for a ride. Appellant gave him a ride to the Racquet Club Apartments, which is where Gonzales directed him to go. He denied any knowledge of any prospective drug sale.

In summary, the evidence the State offered as corroborating the accomplice testimony was:

1. Appellant drove into the parking lot behind Zamora, and when Zamora left his car, appellant parked next to it;

2. Appellant was present in the parking lot when Zamora delivered the drugs;

3. Gonzales, the passenger in appellant's vehicle, made statements to the effect that "He's the one," signifying appellant, when he was arrested;

4. Appellant had $610.00, which was considered by the arresting officer as a large sum under the circumstances, in his possession.

*Reed v. State*, 744 S.W.2d 112 (Tex.Crim. App.1988), contains an exhaustive review of cases applying the inexact, subjective Texas rules concerning corroboration of accomplice testimony. Two principles appear clear from a careful reading of *Reed*. First is that each case must be viewed in light of its own particular facts and circumstances. When we examine all facts in this case, we find that some of the corroborative statements were contradicted by appellant's evidence. While we are mindful of the rule that the evidence should generally be reviewed in the light most favorable to the verdict, we believe it necessary to consider evidence tending to contradict the corroborating evidence in determining its sufficiency. Appellant's explanation of his possession of $610.00 was not contradicted and tends to negate the conclusion and inference that this was an unusually large sum for a person in appellant's circumstances and was, therefore, probably money obtained through drug transactions.

The second principle clearly enunciated in *Reed* is that the corroborating evidence must tend to connect the defendant to the crime. After carefully considering all the facts and circumstances in this case, we must conclude that the evidence is not sufficient in this regard.

There is no corroborating evidence of any direct contact between appellant and Zamora. While Gonzales made accusatory statements against appellant, there is no evidence that tends to connect these statements to this crime. The only real corroborating evidence to this crime is appellant's presence at the scene. It is clear that this is insufficient. Accordingly, we sustain appellant's first point of error.

■ Appellant claims in his second point of error that the trial court erred in failing to instruct the jury that the passenger in appellant's car, Jorge Gonzales, was an accomplice witness as a matter of law. This argument relates to Gonzalez's statements to the police officers when he was arrested. Appellant contends that the jury should have been instructed that Gonzalez was an accomplice witness since his statements, as related by the police officers, were used against appellant.

Appellant made no objection or request on this ground at trial and so has waived error. Moreover, Gonzalez did not testify at trial. The accomplice witness rule governs the testimony of an accomplice, not his excited utterances made at the time of his arrest. We overrule point of error two.

Point of error three avers that appellant was denied the effective assistance of counsel at trial. *See generally Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Appellant complains of his counsel's cross-examination of certain police officers and of Juan Zamora, in which appellant claims information came in which was detrimental to him. Reviewing the record as a whole, however, we conclude that appellant received more than adequate assistance of counsel. We overrule point of error three.

The judgment of the trial court is RE-VERSED and REMANDED for entry of an acquittal.

NYE, C.J., dissenting.

NYE, Chief Justice, dissenting.

I respectfully dissent because I find from the record that the State did present sufficient evidence to corroborate the testimony of the accomplice witness.

I would affirm the conviction of aggravated delivery of heroin. The Court of Criminal Appeals has stated that proof that the accused was at or near the crime scene at or about the time the crime was committed, when combined with suspicious circumstances such as unreasonableness of the hour, lack of apparent reason for the accused's presence at the crime scene, being in the company of the accomplice, and subsequent flight, furnishes sufficient corroboration of an accomplice witness to support a conviction. *Rodriquez v. State*, 508 S.W. 2d 80, 82–3 (Tex.Crim.App.1974); *see also Reed v. State*, 744 S.W.2d 112, 127 (Tex. Crim.App.1988). Also, accomplice testimony may be corroborated by circumstantial evidence. *Wolf v. State*, 674 S.W.2d 831, 838 (Tex.App.—Corpus Christi 1984, pet. ref'd).

The record shows that appellant was at or near the crime scene at or about the time the offense transpired. The evidence indicates that after the accomplice parked his vehicle in the parking lot of the Racquet Club Apartments, he left his vehicle and entered a nearby apartment where the narcotics transaction took place. The evidence also shows that appellant followed the accomplice's vehicle into the parking lot and parked his vehicle right next to the accomplice's vehicle. The criminal transaction occurred at about 10:30 p.m., and only moments later at the time of the "bust," appellant was still seated in his vehicle parked next to the accomplice's vehicle.

Furthermore, a close scrutiny of the facts clearly reveals that appellant acted under suspicious circumstances. This, too, provides sufficient corroboration to support his conviction. The evidence indicates that the actors arrived at the Racquet Club Apartments during the cover of night, and only one went inside to complete the criminal transaction. This late and unusual hour, coupled with the secrecy of the transaction, also supplied the ideal atmosphere needed to ensure the successful completion of the crime.

Appellant testified that George Gonzalez came to his apartment the night of the arrest and asked for a ride to some apartments. Gonzalez neither gave him the name of the apartments he wished to visit nor the apartment number. He only told appellant that he knew some people over there. Appellant testified that he went to the Racquet Club Apartments because this is where Gonzalez directed him to go. The facts strongly suggest that appellant and the accomplice went to the Racquet Club Apartments together. Appellant and the accomplice were first seen on Caravelle Street, turning into the parking lot of the Racquet Club Apartments. After the accomplice parked his vehicle, appellant parked his vehicle right next to it. After a minute or two, Gonzalez got out of the vehicle and stood next to the accomplice's vehicle. When he saw a plain clothes policeman walking towards him, he ran. The policeman ran after him and caught him. After his capture, he said, "The guy in—the guy in the brown car, he's going to get away." Gonzalez was then returned to the parking lot where he pointed to appellant and said, "That's the guy. His name is Leno." Testimony revealed that appellant was sometimes referred to as "Leno." Appellant testified that he drove a brown car over to the Racquet Club Apartments that night.

The conduct exhibited by Gonzalez does not support appellant's version of the fact; i.e., that Gonzalez went to the apartments because he knew some people there. Appellant offered a convenient and innocent explanation for his presence at the scene of the crime which the jury did not believe. In considering all the facts and inferences, appellant's explanation offers no plausible hypothesis for his presence other than that he was a likely participant in the criminal transaction.

Appellant also testified that he had known the accomplice since the seventh or eighth grade. During his trial, which the record indicates began on May 6, 1987, appellant stated that he was twenty-seven years old. The offense occurred on or about September 23, 1986. This means that appellant had known the accomplice for many years prior to the commission of the offense. The evidence indicates that appellant saw the accomplice at least one day before the crime occurred. He also spoke with the accomplice over the telephone prior to his trial. The Court of Criminal Appeals has also stated that one of the factors in corroboration, is that the accomplice and the accused were close associates. *See Paulus v. State,* 633 S.W.2d 827, 845–46 (Tex.Crim.App.1981).

These facts clearly indicate that appellant was in the company of the accomplice at or near the time of the criminal transaction. I find it extraordinary that by sheer accident, as appellant would have this Court believe on appeal, that he and his long time acquaintance just happened to be in the same parking lot of the same apartment complex late at night with their vehicles parked side by side at the time of the "bust."

The majority states that they are mindful of the rule that the evidence should generally be reviewed in the light most favorable to the verdict. However, they have deviated from this rule, in my opinion, by considering evidence tending to contradict the corroborating evidence. An appellate court must view the evidence in a light most favorable to the verdict. This includes accepting all reasonable inferences that tend to support the verdict. Any *conflicts* in the evidence must be resolved in favor of the verdict. We must affirm the conviction unless reasonable minds could not conclude that the totality of the evidence presented is inconsistent with the hypothesis of innocence. *Houston v. State,* 667 S.W.2d 157, 160 (Tex.App.—Houston [14th Dist.] 1982, pet. den'd).

After carefully considering all of the facts and circumstances in the light most favorable to the verdict, I must conclude that the corroborating evidence tends to connect the appellant with the offense committed. Tex.Code Crim.P.Ann. Art. 38.14 (Vernon 1979). I would affirm the judgment of conviction by the jury and the trial court.