**Eustorgio Guzman RESENDEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 13–92–148–CR.

Court of Appeals of Texas, Corpus Christi.

July 29, 1993.

Discretionary Review Refused Nov. 17, 1993.

J.C. Castillo, Houston, for appellant.

Heriberto Silva, Dist. Atty., Rio Grande City, for appellee.

Before FEDERICO G. HINOJOSA, Jr., and KENNEDY and SEERDEN, JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

A jury found appellant, Eustorgio Resendez, guilty of capital murder. The jury found mitigating circumstances, and the trial court assessed punishment at confinement for life. By two points of error, appellant challenges the sufficiency of the evidence and complains that the trial court erred by charging the jury with matters not supported by the evidence. We affirm the trial court's judgment.

Resendez and Ovidio Garcia advanced approximately 100 pounds of marihuana to Juan Hinojosa. Hinojosa, in turn, advanced the marihuana to Ruben Piña. Piña put the marihuana into Juan Arguelles' possession, but law enforcement agents confiscated it. Piña paid part of the debt, and Resendez, Hinojosa, and Garcia met in Rio Grande City on January 29, 1991, to discuss how to collect the rest of the money from Piña. Hinojosa agreed to try to convince Piña to come to a ranch in Starr County. Piña sent Alejandro Garcia in his stead, and Resendez and Ovidio Garcia forced Alejandro to call Piña from a store in Alto Bonito and to tell Piña that the truck had broken down at a rest stop on U.S. Highway 83. Hinojosa carried a .45 caliber handgun, Ovidio Garcia carried a 9 mm handgun, and Resendez carried an AK–47 and a 9 mm handgun taken from Alejandro.

Ruben Piña, Gregorio Piña, and Juan Arguelles arrived in a van at the rest stop. Resendez and Ovidio Garcia approached the van, brandished weapons, and took Gregorio Piña and Juan Arguelles from the van through the front doors. Hinojosa approached the side sliding door, opened it, and Ruben Piña emerged, firing a handgun at Ovidio Garcia and at Hinojosa. Hinojosa, Ovidio Garcia, and Resendez returned fire at the van. Hinojosa shot Ruben Piña once or twice, and Ovidio Garcia shot Arguelles, but neither man was killed. Approximately 20 or 25 shots were fired at the van.

Resendez, Ovidio Garcia, and Hinojosa returned to Alejandro Garcia's truck, which, ironically, would not start. The three men then entered the van, and Resendez shot Ruben Piña in the head. They placed Arguelles in the rear of the van and placed Gregorio Piña next to Ruben Piña's body. They drove west, jettisoning Ruben Piña's .22 caliber handgun along the way. The group then drove the van back to the ranch, where they picked up Alejandro Garcia, who was being held by a man named Jesus.

Hinojosa exited the van, and he and Jesus drove in a northerly direction, away from the ranch. Resendez and Ovidio Garcia drove away in the van. Hinojosa later found the van in a field and spoke with Resendez who

told him that he should burn the truck they had abandoned at the rest stop. Hinojosa and Jesus drove to the rest stop, took Alejandro Garcia's truck to Sullivan City, and burned it. Jesus then took Hinojosa to visit his girlfriend, and Resendez and Ovidio Garcia went to her house and picked up Jesus. Resendez said that they had killed Arguelles, Alejandro Garcia, and Gregorio Piña and had destroyed the evidence. Hinojosa then went to Monterrey with his girlfriend.

The next morning at 8:00 a.m., Deputy Sheriff Mascorro, Deputy Sheriff Gonzales, Inspector Flores, and Inspector Fuentes examined the burned van where it had been found in Starr County. They pulled four bodies, burned beyond recognition, out of the van which was completely burned and riddled with bullet holes. They took the bodies, jewelry, keys, nail clippers, a pocket knife, belt buckles, shell casings, and watches they found in the van. Relatives of the victims identified the various objects as belonging to the victims.

The bodies were transported to McAllen, where Dr. Santos, a forensic pathologist, examined them. Dr. Santos determined that each victim had died before the fire, that the cause of death for bodies 3 and 4 was gunshot wounds to the chest, and that the cause of death for bodies 1 and 2 was gunshot wounds to the head.

Inspectors Flores and Fuentes went to the rest area on U.S. Highway 83 and found bullet casings from five different weapons. On the side of the highway, west of the rest area, they found a .22 caliber handgun.

An informant contacted investigators and gave them information leading to the arrest of Hinojosa, Ovidio Garcia, and Resendez. Hinojosa, still in Monterrey, learned of the investigation and the outstanding warrant from his girlfriend. Hinojosa called the investigators and informed them that he wished to surrender himself and a weapon used in the shoot-out. On March 23, 1991, Hinojosa arrived at the Roma port of entry and was taken into custody. That day he received the Miranda warnings and gave a statement describing the drug deals, the kidnapping, the shoot-out, and the murders. On April 7, 1991, the grand jury in Starr County issued capital murder indictments for Hinojosa, Ovidio Garcia, and Resendez.

When we review the sufficiency of the evidence in a criminal case, we view all the evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found the essential elements of the crime established beyond a reasonable doubt. *Butler v. State,* 769 S.W.2d 234, 239 (Tex.Crim.App.1989); *Prophet v. State,* 815 S.W.2d 836, 837 (Tex. App.—Corpus Christi 1991, no pet.). We also apply this standard to cases involving circumstantial evidence. *Earhart v. State,* 823 S.W.2d 607, 616 (Tex.Crim.App.1991); *Carlsen v. State,* 654 S.W.2d 444, 449 (Tex. Crim.App.1983) (opinion on rehearing). We measure the sufficiency of the evidence against the indictment as incorporated into the jury charge. *Benson v. State,* 661 S.W.2d 708, 715 (Tex.Crim.App.1982) (opinion on rehearing).

A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed, and the corroboration is not sufficient if it merely shows the commission of the offense. TEX.CODE CRIM.PROC.ANN. art. 38.14 (Vernon 1979). The corroborating evidence need neither establish the guilt of the accused nor directly connect the accused to the crime; it only must tend to connect the accused with the offense committed. *Cox v. State,* 830 S.W.2d 609, 611 (Tex.Crim.App.1992).

The trial court charged the jury:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 29th day of January, 1991, in Starr County, Texas, the defendant, Eustorgio Guzman Resendez, did intentionally or knowingly cause the death of more than one person, to-wit: Ruben Piña, Gregorio Piña, Alejandro Garcia, or Juan Arguelles, by shooting more than one with a firearm, during the course of the same criminal transaction, then you will find the defendant guilty of Capital Murder as charged; or

If you find beyond a reasonable doubt that on or about the 29th day of January,

1991, in Starr County, Texas the defendant, Eustorgio Guzman Resendez, acting with intent to promote or assist the commission of the offense of Capital Murder, solicited, encouraged, directed, aided or attempted to aid either Juan Gilberto Hinojosa or Ovidio Garcia, or both, to intentionally or knowingly cause the death of more than one person, to wit: Ruben Piña, Gregorio Piña, Alejandro Garcia, or Juan Arguelles, by shooting more than one with a firearm during the course of the same criminal transaction and did then and there intentionally or knowingly cause the death of more than one of said persons during the same criminal transaction, then you will find the defendant guilty of Capital Murder as charged.

Unless you so find beyond a reasonable doubt or if you have a reasonable doubt therof [sic], then you will acquit the Defendant of Capital Murder and proceed to consider whether the defendant is guilty of Murder.

Appellant contends the State did not produce sufficient evidence to corroborate Hinojosa's testimony. He argues that the State's corroborating evidence should be discounted since that witness contradicted himself, citing *Navejar v. State*, 760 S.W.2d 786 (Tex.App.—Corpus Christi 1988, pet. ref'd).

The State's corroborating evidence included testimony from Roel Piña, Ruben Piña's son, that appellant and Hinojosa were involved in drug deals with his father, that they came to his home early on January 29, 1991, and that Hinojosa told Ruben Piña that he had better pay the money. A relative of Ovidio Garcia testified that appellant was with Alejandro Garcia, Ovidio Garcia, and two other men when Alejandro Garcia made a phone call on January 29, 1991. Juan Piña testified that he received four phone calls from Alejandro, who asked for Ruben, said his truck had broken down, but would not say where he was. Hinojosa's girlfriend testified that appellant and Ovidio Garcia met Hinojosa at their home around 11:00 p.m. that night. The State also offers the presence of shell casings of so many types at the rest area as indicating more than one person was involved in the shoot-out.

Appellant complains that we should discount the testimony that appellant was in the group escorting Alejandro Garcia to a telephone because the witness originally denied identifying appellant as a member of the group. *Navejar* does not compel us to discount any testimony; it only stands for the propositions that we look at each case on its individual facts and record, and that we can consider evidence tending to contradict the corroborating evidence when determining its sufficiency. *Navejar*, 760 S.W.2d at 788.

■ The witness who contradicted himself was related to one of the accused murderers. He was reluctant to testify, and the trial court appointed an attorney for him. After the appointment of counsel, the witness testified that appellant was present when the group arrived and forced Alejandro Garcia to make the phone calls. Even considering the circumstances under which this witness testified, the record includes three witnesses who testified that appellant was with Hinojosa either shortly before, during, or shortly after the kidnapping and murders. Appellant was present when Hinojosa threatened Piña, he was present when Hinojosa and Ovidio Garcia forced Alejandro to make the phone call, and he appeared at Hinojosa's girlfriend's house after the killing, and met with Hinojosa, who immediately left for Mexico. We hold this evidence to be sufficient evidence tending to connect appellant with the offense. We overrule appellant's first point of error.

By his second point of error, appellant complains that the trial court erred by charging the jury that it could convict appellant upon finding that appellant aided or attempted to aid Juan Gilberto Hinojosa, Ovidio Garcia, or both to intentionally or knowingly cause the death of more than one person. Appellant argues that the evidence showed Hinojosa shot at only one victim, who shot first, and that the evidence was indecisive regarding whether Hinojosa killed anyone.

■ The trial court commits error by charging the jury that it can convict on a theory that has no evidentiary support. *Stanley v. State*, 625 S.W.2d 320, 321 (Tex. Crim.App.1981). To show reversible error, appellant must show that he was harmed by

the charge. *Gibson v. State,* 726 S.W.2d 129, 132 (Tex.Crim.App.1987). We apply the harm analysis set forth in *Almanza v. State,* 686 S.W.2d 157, 171–72 (Tex.Crim.App.1984) (opinion on rehearing), unless the error implicates rights flowing from the United States Constitution, in which case we apply the federal harmless error standard, the equivalent of Tex.R.App.P. 81(b)(2). *Belyeu v. State,* 791 S.W.2d 66, 75 (Tex.Crim.App. 1989).

■ We reverse for charge error if the defect in the charge was objected to and the error was calculated to injure the rights of the defendant. *Almanza,* 686 S.W.2d at 172. We also reverse when the defendant failed to object but the error was so egregious that it deprived the defendant of a fair trial. *Id.* In either case, we measure the actual degree of harm in light of the entire jury charge, the state of the evidence, the contested issues, the weight of probative evidence, the arguments of counsel, and any other relative information revealed by the record as a whole.

Appellant objected to the charge on the ground that there was no evidence that Juan Hinojosa shot and intentionally killed more than one person. The charge, if erroneous on this ground, would require reversal if the error was calculated to injure appellant's rights. The evidence at trial showed that Ruben Piña was the only victim who was probably already dead at the time Hinojosa left appellant and Ovidio Garcia with the victims. The only factual questions the jury had to decide was whether Hinojosa's testimony was credible, whether appellant shot Ruben Piña, Alejandro Garcia, Gregorio Piña, and Arguelles to death before torching the van, or whether he aided or attempted to aid Ovidio Garcia to do so. Including Hinojosa as a possible principal in multiple murders could not possibly affect the jury's decision making process. We overrule appellant's second point of error.

We AFFIRM the trial court's judgment.