TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00153-CR






James Cunningham, Appellant



v.



The State of Texas, Appellee







FROM THE COUNTY COURT AT LAW NO. 2 OF WILLIAMSON COUNTY


NO. 98-0197-2, HONORABLE ROBERT F. B. MORSE, JUDGE PRESIDING







 Appellant James Cunningham was convicted by a jury of driving while intoxicated
(DWI). See Tex. Penal Code Ann. § 49.04 (West Supp. 2000). He was sentenced to 180 days'
confinement in county jail and fined $2000. Cunningham appeals the conviction and requests a
new trial in three points of error, asserting that the trial court: (1) abused its discretion by
admitting in evidence the record generated by the intoxilyzer instrument used to analyze
Cunningham's breath (the intoxilyzer slip); (2) abused its discretion by denying Cunningham's
motion to strike the intoxilyzer slip; and (3) reversibly erred by submitting an instruction in the
court's charge authorizing the jury to convict on a theory that had no evidentiary support, namely
that Cunningham had an alcohol concentration of 0.10 grams or more of alcohol per 210 liters of
breath. We will reverse the judgment of conviction and remand the cause for a new trial.


BACKGROUND


 On November 22, 1997, Deputies James Thomsen and Steve Hall of the
Williamson County Sheriff's Department stopped Cunningham after witnessing him fail to stop
at an intersection. During the course of the stop, they suspected Cunningham was driving while
intoxicated. After administering a series of field sobriety tests, the deputies arrested Cunningham
for DWI and transported him to the Williamson County Jail. There Cunningham consented to
have his alcohol concentration measured by the Intoxilyzer Instrument Model No. 5000. The
results of the test as indicated on the intoxilyzer slip were "0.117" and "0.118."

 The State charged Cunningham with the offense of DWI, alleging two theories of
guilt pursuant to the definition of "intoxicated" in the Texas Penal Code. See Act of May 29,
1993, 73d Leg., R.S., ch. 900, sec. 1.01, § 49.01, 1993 Tex. Gen. Laws 3586, 3696 (Tex. Penal
Code Ann. § 49.01(2), since amended by Act of May 28, 1999, 76th Leg., R.S., ch. 234, sec.
1, § 49.01(2), 1999 Tex. Gen. Laws 1082, 1082 (reducing the statutory limit on alcohol
concentration from 0.10 to 0.08)). (1) The State alleged that Cunningham unlawfully drove a motor
vehicle in a public place while intoxicated because: (1) he did not have the normal use of his
mental or physical faculties by reason of the introduction of alcohol into his body; and (2) he did
then and there have an alcohol concentration of 0.10 or more. See Tex. Penal Code Ann.
§ 49.01(2).

 Cunningham's first two points of error arise from events that occurred during the
State's presentation of its case-in-chief. The State's first witness, Deputy James Thomsen,
testified to the state of Cunningham's mental and physical faculties and his performance of the
field sobriety tests on November 22, 1997. To impeach Deputy Thomsen's credibility,
Cunningham introduced in evidence, without requesting a limiting instruction, the probable cause
affidavit Deputy Thomsen prepared on November 22, 1997. The probable cause affidavit
contained, among other things, the following notation: "{x} breath test, results 1. 0.117 
2. 0.118."

 The State called as its last witness Deputy Curtis Wallace, a certified intoxilyzer
operator with the Williamson County Sheriff's Department who administered Cunningham's
intoxilyzer test on November 22, 1997. Deputy Wallace testified that he had successfully
completed a forty-hour course to become an intoxilyzer operator and that he had also received
instruction on how to operate the Intoxilyzer Instrument Model No. 5000, the specific model used
to administer Cunningham's test. His testimony also established that the State had licensed him
to be an intoxilyzer operator and that the Department of Public Safety (DPS) had certified him as
a qualified operator of the Intoxilyzer Instrument Model No. 5000. Deputy Wallace described
the procedure he followed in running a reference sample and in testing Cunningham's level of
intoxication. Deputy Wallace also identified the intoxilyzer slip that was produced by the
intoxilyzer instrument following the administration of the test.

 After Deputy Wallace was excused, the State offered the intoxilyzer slip in
evidence. Cunningham stated that he had no objection to the intoxilyzer slip's admission as long
as the State provided the expert testimony necessary to explain the results. Cunningham referred
to the State's burden to lay a proper predicate before intoxilyzer test results may be admitted in
evidence. To establish this predicate, the State must: (1) establish that the machine functioned
properly on the day of the test as evidenced by the running of a reference sample; (2) show the
existence of periodic supervision over the machine and its operation by one who understands the
scientific theory of the machine; and (3) prove the result of the test through a witness qualified
to translate and interpret the result. See Harrell v. State, 725 S.W.2d 208, 209-10 (Tex. Crim.
App. 1986) (emphasis added).

 The expert scheduled by the State to interpret the intoxilyzer test results was Tony
Ortiz, a chemist/toxicologist and technical supervisor with the DPS. A technical supervisor is
designated by rule to provide expert testimony concerning all aspects of breath alcohol testing,
including but not limited to the certification of techniques, methods, and programs under that
person's supervision. See 37 Tex. Admin. Code §§ 19.3(h), .7(y)(7) (1999). The technical
supervisor's primary function is to provide technical, administrative, and supervisory expertise
in safeguarding the scientific integrity of the breath alcohol testing program's acceptability for
evidential purposes. See id. § 19.7(y).

 The State contended that while it would normally need to present expert testimony
to establish the predicate necessary to admit the test results contained in the intoxilyzer slip, such
testimony was not necessary in this case because the results were already in evidence through
Cunningham's admission of the probable cause affidavit. The State further argued that because
Cunningham did not request a limiting instruction when he offered the probable cause affidavit,
the affidavit and the intoxilyzer results contained therein had become part of the general evidence
of the case. Because the results were already in evidence, the State contended that it only needed
to lay a proper business records predicate, which had already been established by Deputy
Wallace's testimony. Agreeing with the State's position, the trial court admitted the intoxilyzer
slip in evidence after overruling Cunningham's objection and motion to strike. The State then
rested its case-in-chief without calling its expert witness, Tony Ortiz, to the stand.

 Cunningham moved for an instructed verdict of not guilty as to the theory that he
had an alcohol concentration of 0.10 grams or more of alcohol per 210 liters of breath. He
contended that there was no evidence before the jury explaining that the numbers contained in the
probable cause affidavit or in the intoxilyzer slip represented the measure of alcohol concentration
in grams of alcohol per 210 liters of breath. (2) Cunningham concluded that this lack of evidence
would not support a jury finding that he was driving with an alcohol concentration in excess of
0.10 grams of alcohol per 210 liters of breath. The trial court denied the motion for instructed
verdict.

 At the close of both parties' cases, the trial court submitted the following definition
of "intoxicated" to the jury: "'Intoxicated' means not having the normal use of physical or mental
faculties by reason of the introduction of alcohol into the body, or having an alcohol concentration
of 0.10 grams or more per 210 liters of breath." Cunningham objected to the portion of the jury
instruction that defined "intoxicated" as "having an alcohol concentration of 0.10 grams or more
per 210 liters of breath" on the same grounds presented in his motion for instructed verdict. 
Again, the court overruled his objection. Without waiving his objection, Cunningham then
requested a special verdict requiring the jury to make separate findings on his guilt or innocence
under each theory. Cunningham proposed that one verdict be based on the theory that he was
intoxicated because his physical or mental faculties were impaired by alcohol consumption and
that the second verdict be based on the theory that he was intoxicated because his alcohol
concentration exceeded 0.10 grams of alcohol per 210 liters of breath. The trial court overruled
Cunningham's request for a special verdict and submitted a general charge allowing the jury to
convict on either theory. The jury returned a verdict of guilty on the general charge. (3)


DISCUSSION


 In three points of error, Cunningham asks this Court to overturn the jury's verdict
and grant his request for a new trial, alleging that the trial court: (1) abused its discretion by
admitting the intoxilyzer slip in evidence; (2) abused its discretion by denying Cunningham's
motion to strike the intoxilyzer slip; and (3) reversibly erred by submitting an instruction in the
court's charge authorizing the jury to convict on a theory that had no evidentiary support, namely
that Cunningham had an alcohol concentration of 0.10 grams or more of alcohol per 210 liters of
breath.


Admissibility of the Evidence

 We begin by addressing Cunningham's first two points of error and determining
whether the intoxilyzer slip was admissible evidence. The standard of review for determining
whether a trial court errs in admitting evidence is abuse of discretion. See Mozon v. State, 991
S.W.2d 841, 846-47 (Tex. Crim. App. 1999). A trial court abuses its discretion when it applies
an erroneous legal standard. See DuBose v. State, 915 S.W.2d 493, 497-98 (Tex. Crim. App.
1996). To admit intoxilyzer test results in evidence, the party offering the evidence must first lay
the proper predicate by: (1) establishing that the machine functioned properly on the day of the
test as evidenced by the running of a reference sample; (2) showing the existence of periodic
supervision over the machine and its operation by one who understands the scientific theory of
the machine; and (3) proving the result of the test through a witness qualified to translate and
interpret the result. See Harrell, 725 S.W.2d at 209-10.

 Our review of the record reveals that the State did not satisfy the last prong of the
predicate. Deputy Wallace, the certified intoxilyzer operator, did not translate or interpret the
results, nor was he shown by his testimony to be qualified to do so. Technical Supervisor Tony
Ortiz, the expert designated by rule, (4) would have been qualified to analyze the results in
accordance with the third prong of the predicate had the State chosen to call him as a witness. 
Because the State did not elicit testimony from this witness or any other witness qualified to
interpret the results, the intoxilyzer slip should not have been admitted.

 The State argues that because Cunningham failed to request a limiting instruction
as to the test results contained in the probable cause affidavit, he waived any objection to the
predicate necessary for admission of the intoxilyzer slip in evidence. We disagree.

 The State relies on Green v. State to support its argument. See 942 S.W.2d 149
(Tex. App.--Fort Worth 1997, no pet.). In a trial for sexual assault of a child, Green testified to
the commission of an extraneous offense to support his defense that the sexual assault allegations
had been made in retaliation for a family disagreement. See id. at 150. Green did not object or
request a limiting instruction at the time of his testimony but requested that a limiting instruction
be included in the jury charge. See id. The court of appeals upheld the trial court's denial of
Green's request for a limiting instruction and found that the evidence was admissible for all
purposes because Green failed to request a limiting instruction at the time evidence of the
extraneous offense was first admitted. See id. at 151.

 The instant case is distinguishable from Green. The evidence at issue in Green was
of an extraneous offense. See id. at 150. The State is not required to satisfy a predicate prior to
admission of an extraneous offense in evidence. In contrast, to admit the results of an intoxilyzer
test in evidence, the State must satisfy the three-part predicate set out in Harrell, 725 S.W.2d at
209-10. Green does not address whether a party who fails to request a limiting instruction waives
all its objections in the case of scientific evidence that requires a predicate. Thus, Green does not
support the State's argument that Cunningham's failure to request a limiting instruction as to the
probable cause affidavit waived any objections to the State's failure to lay a predicate for the
admission of the intoxilyzer slip. Furthermore, the defendant in Green made no objection to the
admission of evidence of the extraneous offense, nor did he contend on appeal that the evidence
was erroneously admitted. See Green, 942 S.W.2d at 150. In the instant case, Cunningham did
make a timely and proper objection to the admission of the intoxilyzer slip and now complains on
appeal that his objection was erroneously overruled.

 We believe that the facts of Harrell are more on point with the facts of the instant
case. In Harrell, the certified intoxilyzer operator testified that he administered an intoxilyzer test
to Harrell and that the machine produced a result of "0.13". See Harrell, 725 S.W.2d at 209. 
Harrell did not object to this testimony. He objected later in the trial during the testimony of the
technical supervisor on the grounds that the State had failed to lay a proper predicate. The State
argued on appeal that because Harrell did not object during the intoxilyzer operator's testimony
about the intoxilyzer test result, he did not preserve his complaint for appeal. See id.

 The court of criminal appeals disagreed. It found that Harrell did not need to
object during the intoxilyzer operator's testimony. See id. at 210. The intoxilyzer operator had
only testified to the first prong of the predicate and was not qualified to testify to the last two. 
The court stated that an objection during this testimony would have been meaningless since the
intoxilyzer operator was not qualified to provide the information necessary to address the
objection and satisfy the last two prongs of the predicate. The court found that the objection was
timely and properly made during the testimony of the technical supervisor, who was the only
witness qualified to explain and interpret the intoxilyzer test result, thus satisfying the remainder
of the predicate.

 The court of criminal appeals in Harrell required the State to establish each prong
of the predicate even though the intoxilyzer result "0.13" was already in evidence through the
testimony of the certified intoxilyzer. See id. at 209-10. At the time of Harrell's objection, the
State had only satisfied the first prong of the predicate through the intoxilyzer operator's
testimony. The fact that the intoxilyzer results were already in evidence did not excuse the State
from establishing the remaining two prongs through a qualified expert witness.

 Similarly, in the instant case, the intoxilyzer results were already in evidence when
Cunningham objected to the State's admission of the intoxilyzer slip on the ground that the third
prong of the predicate had not been established. It is important to note that the probable cause
affidavit contained only the following notation: "{x} breath test, results 1. 0.117 2. 0.118." It
included no information explaining the significance of the numbers contained therein or indicating
that they were a measure of alcohol concentration in grams of alcohol per 210 liters of breath. 
Nor did the State put on a witness qualified to provide this information. Prior to Cunningham's
objection, the State had failed to establish the third prong of the predicate by supplying an expert
qualified to testify that the numbers "0.117" and "0.118" represented Cunningham's alcohol
concentration measured in grams of alcohol per 210 liters of breath. Therefore, the intoxilyzer
slip was inadmissible. As in Harrell, the fact that the test results were already in evidence does
not excuse the State from satisfying each prong of the predicate. The trial court abused its
discretion in admitting the intoxilyzer slip and in denying Cunningham's motion to strike. 
Accordingly, Cunningham's first two points of error are sustained.


Error in the Charge

 Even if we assume that the test results were properly before the jury, the court's
charge was erroneous because it authorized the jury to convict on a theory that was unsupported
by the evidence, i.e., that the alcohol concentrations referenced in the test results were linked to
a measure of grams of alcohol in 210 liters of breath. It is error for the trial court in its charge
to authorize conviction on a theory that has no evidentiary support. See Stanley v. State, 625
S.W.2d 320, 321 (Tex. Crim. App. 1981); Ferguson v. State, 2 S.W.3d 718, 720-21 (Tex.
App.--Austin 1999, no pet.); Resendez v. State, 860 S.W.2d 605, 608 (Tex. App.--Corpus Christi
1993, pet. ref'd). As discussed, the State presented no testimonial or documentary evidence
explaining to the jury what the numbers "0.117" and "0.118" signified. Without such evidence,
the court was unauthorized to submit a charge that would allow the jury to use these numbers to
convict Cunningham on the theory that his alcohol concentration exceeded 0.10 grams of alcohol
per 210 liters of breath, considering that there was no evidence that these numbers represented
such a measure. We sustain Cunningham's third point of error.


Harm Analysis

 Having determined that the trial court erred in admitting the intoxilyzer slip and
in charging the jury on a theory for which there was no evidence, we must determine whether
these errors resulted in sufficient harm to warrant a reversal of the conviction. There are two
well-established standards that we apply when reviewing harm that may have been caused by an
erroneous admission of evidence and harm that may have been caused by an error in the jury
charge.

 First, a violation of the evidentiary rules that results in erroneous admission of
evidence is a nonconstitutional error. See King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App.
1997); Tate v. State, 988 S.W.2d 887, 890 (Tex. App.--Austin 1999, pet. ref'd). In this case, the
trial court admitted the intoxilyzer slip even though the State failed to establish the requisite
predicate set out in Harrell. This amounted to a violation of a common law evidentiary rule. See
Harrell, 725 S.W.2d at 209-10. Thus, the trial court's erroneous admission of the intoxilyzer slip
was nonconstitutional error.

 In the case of nonconstitutional error, reversal is required only if the trial court's
error affected Cunningham's substantial rights. See Tex. R. App. P. 44.2(b). A substantial right
is affected when the error had a substantial and injurious effect or influence in determining the
jury's verdict. See King, 953 S.W.2d at 271. A criminal conviction should not be overturned
for nonconstitutional error if the appellate court, after examining the record as a whole, has fair
assurance that the error did not influence the jury or had but a slight effect. See Johnson v. State,
967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

 Second, article 36.19 of the Code of Criminal Procedure governs appellate review
of error in a jury charge. See Tex. Code Crim. Proc. Ann. art. 36.19 (West 1981). If the error
in the charge was the subject of a timely objection in the trial court, then reversal is required if
the error is "calculated to injure the rights of the defendant." Id. This means that the accused
must show some harm from the error. See Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim.
App. 1984). In other words, an error that has been properly preserved by objection will require
reversal as long as the error is not harmless. See id. Because Cunningham properly objected to
the jury charge at trial, the trial court's ruling must be reversed upon a finding of "some harm"
attributable to the charge error. Almanza, 686 S.W.2d at 171.

 We find that the combination of both the erroneous admission of the intoxilyzer slip
and the erroneous submission of the jury charge harmed Cunningham. The trial court's errors
allowed the State to argue and the jury to speculate that the test results indicated that
Cunningham's alcohol concentration exceeded 0.10 grams of alcohol per 210 liters of breath as
set out in the court's charge. The State produced no expert testimony to establish that "0.117"
and "0.118" were indeed a measure of Cunningham's alcohol concentration in grams per 210
liters of breath. Such testimony would have allowed the jury to make a valid comparison between
the test results and the statutory limit of 0.10 in the jury charge, both of which are measured in
grams of alcohol per 210 liters of breath. Only then could the jury have convicted Cunningham
of DWI on the theory that Cunningham's alcohol concentration exceeded the statutory limit. 
Absent such testimony, the jury was allowed to convict Cunningham on the basis of two
unexplained numbers. In light of these facts, we are confident that the trial court's erroneous
admission of the evidence had a substantial and injurious influence in determining the jury's
verdict. Furthermore, we hold that the charge error harmed Cunningham because the jury was
allowed to convict him on a theory hat was not supported by evidence.


CONCLUSION


 In summary, the State failed to satisfy the third prong of the Harrell predicate when
it neglected to put on testimony by a qualified expert that the numbers in the intoxilyzer slip
represented Cunningham's alcohol concentration measured in grams of alcohol per 210 liters of
breath. As a result, the trial court erred in ruling that the intoxilyzer slip was admissible. 
Because this evidence was not properly before the jury, the trial court further erred in submitting
a charge that allowed the jury to convict on the basis that Cunningham's alcohol concentration
exceeded 0.10 grams of alcohol per 210 liters of breath, a theory that had no evidentiary support. 
Applying the appropriate standards of review for harm analysis, we conclude that Cunningham
was harmed by these errors. The trial court's judgment is reversed, and the cause is remanded
for a new trial.



 

 Mack Kidd, Justice

Before Justices Jones, Kidd, and Patterson

Reversed and Remanded

Filed: April 27, 2000

Do Not Publish

1. All references to section 49.01 of the Texas Penal Code will be to the version that existed
prior to the 1999 amendments.
2. The numbers in the probable cause affidavit and in the intoxilyzer slip appeared without any
notation to indicate that they were a measure of grams of alcohol per 210 liters of breath.
3. At the hearing on his motion for new trial, Cunningham introduced affidavit evidence that
only four out of six jurors found him guilty on the theory that alcohol consumption had impaired
his physical and mental faculties, while all six jurors found him guilty on the theory that his
alcohol concentration exceeded 0.10 grams of alcohol per 210 liters of breath.
4. See 37 Tex. Admin. Code §§ 19.3(h), .7(y) (1999).


. Code Crim. Proc. Ann. art. 36.19 (West 1981). If the error
in the charge was the subject of a timely objection in the trial court, then reversal is required if
the error is "calculated to injure the rights of the defendant." Id. This means that the accused
must show some harm from the error. See Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim.
App. 1984). In other words, an error that has been properly preserved by objection will require
reversal as long as the error is not harmless. See id. Because Cunningham properly objected to
the jury charge at trial, the trial court's ruling must be reversed upon a finding of "some harm"
attributable to the charge error. Almanza, 686 S.W.2d at 171.

 We find that the combination of both the erroneous admission of the intoxilyzer slip
and the er