

# NUMBER 13-19-00278-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**EUSTORGIO GUZMAN RESENDEZ,**                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                    **Appellee.**

---

### On appeal from the 229th District Court
### of Starr County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Benavides, Longoria, and Tijerina
### Memorandum Opinion by Justice Longoria

Appellant Eustorgio Guzman Resendez appeals the trial court's denial of his motion for post-conviction forensic testing. By eight issues, which we reorganize and construe as three issues, Resendez argues that: (1) Starr County did not have jurisdiction in the underlying criminal case; (2) the trial court erred in denying his motion for post-conviction DNA testing; and (3) he received ineffective assistance of counsel. We affirm.

## I. Background[1]

A Starr County jury convicted Resendez of capital murder in 1992 and sentenced him to life imprisonment in the Texas Department of Criminal Justice—Institutional Division. *See Resendez v. State*, 860 S.W.2d 605, 606 (Tex. App.—Corpus Christi–Edinburg 1993, pet. ref'd). This appeal relates to the deaths of Resendez's four victims, Ruben Pina, Gregorio Pina, Alejandro Garcia, and Juan Arguelles, whose bodies were "burned beyond recognition" and found in a van "completely burned and riddled with bullet holes." *Id.* at 607. Resendez appealed from his conviction, but we affirmed. *See id.*

In the intervening years, Resendez has filed a number of appeals and petitions for mandamus relating to his efforts to have the four corpses of the victims in the underlying offense exhumed for DNA testing.[2] In February 2019, Resendez filed a motion for forensic DNA testing, which the trial court denied "because identity was not or is not an issue in the case." This appeal followed.

## II. Jurisdiction

In his first issue, Resendez asserts that "[b]y requesting Forensic DNA Testing of the Blood from the alleged Crime scene Appellant also challenges the Starr County Jurisdiction." In a single paragraph, Resendez speculates, based on a comment by the Starr County Sherriff, that the victims were actually murdered in Hidalgo County. Thus,

---

[1] This case is before this Court on transfer from the Fourth Court of Appeals in San Antonio pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001. Because this is a transfer case, we apply the precedent of the San Antonio Court of Appeals to the extent it differs from our own. *See* TEX. R. APP. P. 41.3.

[2] Both this Court and the San Antonio Court of Appeals have denied Resendez's requests for mandamus relief. *See In re Resendez*, No. 13-20-00433-CR, 2020 WL 6278290, at *1 (Tex. App.—Corpus Christi–Edinburg Oct. 27, 2020, no pet. h.) (mem. op., not designated for publication); *In re Resendez*, No. 04-20-00386-CR, 2020 WL 4607065, at *1 (Tex. App.—San Antonio Aug. 12, 2020, no pet.) (mem. op., not designated for publication).

Resendez claims that if the blood test does not match the victims, it might mean that the crime occurred outside Starr County and that "the Prosecutor brought forth an indictment without proper Jurisdiction." In other words, Resendez argues, hypothetically, that the trial court lacked jurisdiction. However, the San Antonio Court of Appeals has observed that "[w]here a case may properly be tried is a question of venue, not jurisdiction. Venue, even if improper, does not affect the power or jurisdiction of a district court to hear and determine a felony case." *Meraz v. State*, 415 S.W.3d 502, 505 (Tex. App.—San Antonio 2013, pet. ref'd). Additionally, based on the indictment and the actual facts of the case as proven during the trial, the offense occurred within Starr County. We overrule Resendez's first issue.

### III. POST-CONVICTION DNA TESTING

In his second issue, Resendez argues that the court erred in denying his motion for post-conviction DNA testing.

### A. Standard of Review & Applicable Law

We review a trial court's decision on a motion for DNA testing under a bifurcated standard of review. *Lyon v. State*, 274 S.W.3d 767, 768 (Tex. App.—San Antonio 2008, pet. ref'd). "We afford almost total deference both to the trial court's determination of historical fact and to its application of law-to-fact issues that turn on credibility and demeanor." *Jacobs v. State*, 115 S.W.3d 108, 112 (Tex. App.—Texarkana 2003, pet. ref'd). However, we review de novo other application-of-law-to-fact issues, such as the ultimate issue in post-conviction DNA testing cases: "whether a reasonable probability exists that exculpatory DNA tests would prove innocence." *Rivera v. State*, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002).

3

An applicant will be entitled to post-conviction DNA testing if:

1)  the court finds that:

    A)  the evidence:

        i)  still exists and is in a condition making DNA testing possible; and

        ii)  has been subjected to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect;

    B)  there is a reasonable likelihood that the evidence contains biological material suitable for DNA testing; and

    C)  identity was or is an issue in the case; and

2)  the convicted person establishes by a preponderance of the evidence that:

    A)  the person would not have been convicted if exculpatory results had been obtained through DNA testing; and

    B)  the request for the proposed DNA testing is not made to unreasonably delay the execution of sentence or administration of justice.

TEX. CODE CRIM. PROC. ANN. art. 64.03(a).

## B.  Analysis

Resendez has filed affidavits from two medical professionals; both indicated that the method of identification in this case was inadequate and substandard. Both medical professionals criticize the lack of DNA testing or dental comparisons used to identify the victims; in the case below, living relatives of the victims identified the bodies by identifying various objects and personal belongings found alongside the bodies. However, Resendez has failed to demonstrate how any potentially exculpatory DNA evidence would have changed the verdict in his case. *See* TEX. CODE CRIM. PROC. ANN. art. 64.03(a).

4

"The bottom line in post-conviction DNA testing is this: Will this testing, if it shows that the biological material does not belong to the defendant, establish, by a preponderance of the evidence, that he did not commit the crime as either a principal or a party?" *Ex parte Gutierrez*, 337 S.W.3d 883, 889 (Tex. Crim. App. 2011). For example, in *Blacklock v. State*, the Texas Court of Criminal Appeals observed that the defendant, in his motion for DNA testing, "has fairly alleged, and shown by a preponderance of the evidence, that the victim's lone attacker is the donor of the material for which appellant seeks DNA testing. Thus, on this record, exculpatory DNA test results, excluding appellant as the donor of this material, would establish appellant's innocence." 235 S.W.3d 231, 232 (Tex. Crim. App. 2007).

However, in the present case, Resendez simply challenges the identity of the victims themselves. At best, the DNA testing that Resendez seeks would only "muddy the waters" as to who was killed; it would not shed any light on who committed the murder of the four victims. *Gutierrez*, 337 S.W.3d at 900; *Garcia v. State*, 327 S.W.3d 269, 273 (Tex. App.—San Antonio 2010, pet. ref'd) (concluding that to be entitled to post-conviction DNA testing, the identity of the perpetrator must be at issue, not the identity of the victims). In other words, the requested DNA testing would have no bearing on whether Resendez committed the crime as either as the principal perpetrator or as a party. *See Gutierrez*, 337 S.W.3d at 900. Therefore, confirming the identity of the four victims would not establish by a preponderance of the evidence that Resendez would not have been convicted. *See id.*; *see also* TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(2)(A). We overrule Resendez's second issue.

5

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

In his third issue, Resendez argues that he received ineffective assistance of counsel.

### A. Standard of Review & Applicable Law

For a claim of ineffective assistance of counsel to be sustained, an appellant must satisfy the two-prong test set forth under *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the first prong, an appellant must show by a preponderance of the evidence that counsel's performance fell below an objective standard of reasonableness and prevailing professional norms. *Id*.; *Chapa v. State*, 407 S.W.3d 428, 431 (Tex. App.—Houston [14th Dist.] 2013, no pet.). To evaluate the effectiveness of counsel's performance, we look at the totality of the representation. *See Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Any claim for ineffectiveness of counsel must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *See Thompson*, 9 S.W.3d at 814. If the record is silent on the motivation behind counsel's tactical decisions, then an appellant usually cannot overcome the strong presumption that counsel's representation was reasonable. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994) (en banc). Because "the record is generally underdeveloped," direct appeal is usually an inadequate vehicle for claims of ineffective assistance of counsel. *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012). Additionally, courts are hesitant to declare a counsel's performance as deficient until counsel has been afforded an opportunity to explain her reasoning behind her performance. *See id*. For that reason, "we commonly assume a

strategic motive if any can be imagined and find counsel's performance deficient only if the conduct was so outrageous that no competent attorney would have engaged in it." *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005).

Under the second prong, an appellant must show that counsel's performance prejudiced the defense such that there was a reasonable probability that, but for counsel's unprofessional errors, the outcome of the trial would have been different. *See Strickland*, 466 U.S. at 687.

## B. Analysis

In a single paragraph, Resendez argues that he was denied effective assistance of counsel because his counsel's failure to "let appellant know of denial [of motion for DNA testing] *almost* prevented appellant from appealing his DNA denial." (emphasis added). However, Resendez acknowledges that this alleged failure did not affect his ability to pursue an appeal or change the outcome of the proceedings below in anyway. Thus, Resendez has failed on the second *Strickland* prong. *See id.* We overrule Resendez's third issue.

## V. CONCLUSION

We affirm the trial court's judgment.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
4th day of February, 2021.