NO. 07-01-0042-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



APRIL 29, 2002



______________________________




JOSE L. VASQUEZ, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 177TH DISTRICT COURT OF HARRIS COUNTY;



NO. 831576; HONORABLE CAROL DAVIES, JUDGE



_______________________________



Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

 Appellant Jose L. Vasquez was convicted by a jury of aggravated sexual assault
and sentenced to confinement for 25 years in the Institutional Division of the Department
of Criminal Justice. He challenges the legal and factual sufficiency of the evidence to
sustain that conviction by asserting the evidence (1) is insufficient to corroborate the
testimony of the accomplice witness that he penetrated the female sexual organ of the
victim as required by the Code of Criminal Procedure, (2) is legally insufficient to support
the conviction under paragraphs one and two of the indictment because the evidence does
not show that he placed the victim in fear that serious bodily injury or death would be
imminently inflicted on her, (3) is factually insufficient to support the conviction under
paragraphs one, two, and three of the indictment, and thus the verdict is clearly wrong and
manifestly unjust, and (4) is legally insufficient to support the conviction under paragraph
four of the indictment because there is no evidence that he assaulted the victim anally. 
Finding no reversible error, we affirm the judgment of the trial court. 

 On the night of December 18, 1999, the 14-year-old victim, T. F., went to a
quinceanera with her friend N. R. At the party, the girls met two boys, who identified
themselves as Daniel and Jose. About 1:30 a.m., the girls could not find who brought them
to the party so that they could return home. Jose told them his brother would give them
a ride, so they got into a station wagon with nine Hispanic males. When the driver went
in the opposite direction of the home of N. R., she managed to escape as it stopped at a
traffic light and obtained the license plate number. N. R. then ran home and called the
police. T. F. tried to crawl out of the back of the station wagon, but someone stopped her. 
The car was driven down a dirt road and into a field. The men got out of the car, and T.
F. tried to run away, but was pushed to the ground and had her clothes torn off. She was
then assaulted, according to her testimony, nine times vaginally and three times anally. 
Some of these assaults occurred simultaneously. One or more of the men also attempted
to force her to perform oral sex and ejaculated on her face. During most of the assaults, 
her eyes were covered, so she could not identify who was assaulting her at any particular
moment, but she testified they were laughing during the assaults. The men then got back
into the car and left, and T. F. ran to a local motel and called the police. The station
wagon was stopped a short time later, and T. F. identified the men as those who assaulted
her. 

 In the first count of the indictment, appellant was charged with intentionally and
knowingly causing the penetration of the female sexual organ of the complainant by acts
and words placing her in fear that serious bodily injury and death would be imminently
inflicted on her. In the second count, he was charged with causing the penetration of the
anus of the complainant by the same aggravating acts. In the third and fourth counts,
appellant was charged with the penetration of the complainant vaginally and anally by
acting in concert with Miguel Lopez and Miguel Flores, who engaged in the conduct
described and which occurred during the course of the same criminal episode. 

 During the trial, one of the other men present that night, Christian Padilla, testified
that appellant got on top of the victim, but did not know if he entered her. He further stated
that appellant "didn't last long." It is appellant's contention in his first issue that the only
evidence he had sexual intercourse with the victim or participated in any way is the
testimony of the accomplice witness. 

 Article 38.14 of the Code of Criminal Procedure provides:

 A conviction cannot be had upon the testimony of an accomplice unless
corroborated by other evidence tending to connect the defendant with the
offense committed; and the corroboration is not sufficient if it merely shows
the commission of the offense. 


 Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 1979). There is no dispute among
the parties that Padilla is an accomplice witness. In determining whether an accomplice
witness's testimony has been corroborated, the accomplice testimony is ignored, and the
remaining evidence is examined to determine if it tends to connect the defendant to the
offense. Colella v. State, 915 S.W.2d 834, 838 (Tex.Crim.App. 1995); Munoz v. State, 853
S.W.2d 558, 559 (Tex.Crim.App. 1993). The corroborative evidence does not need to
establish the defendant's guilt of the charged offense nor directly link him to the offense,
but is sufficient if it tends to connect him to the offense. Colella, 915 S.W.2d at 838. All
facts, both direct and circumstantial, may be considered, and if the combined cumulative
weight of the other incriminating evidence tends to connect the defendant with the
commission of the offense, then the requirements of article 38.14 have been met. Gosch
v. State, 819 S.W.2d 775, 777 (Tex.Crim.App. 1991), cert. denied, 509 U.S. 922, 113 S.Ct.
3035, 125 L.Ed.2d 722 (1993). 

 The victim was unable to identify appellant as one who assaulted her, covered her
eyes, pushed her to the ground, or held her down. However, appellant admitted in his own
testimony that he was present in the car and during some of the assaults. He also testified
that he heard one of the men say while in the car that they were going to rape her. When
arrested, appellant had dirt on his knee and his pants were unfastened, which was similar
to the physical appearance of some of the other men in the car, although appellant
attempted to explain his appearance by testifying that he went off to urinate, slipped and
fell to his knee. There were no positive tests for blood or seminal fluid on appellant's
clothing, but his DNA was found on the victim's halter top, chin, and neck, for which
appellant could provide no explanation. 

 Thus, even without Padilla's testimony, appellant was undisputedly connected to
the scene of the crime and to some contact with the victim in order that his DNA was found
on her. He also had mud on his knee and his pants were unfastened, such as might exist
had appellant attempted to recently sexually assault the victim. Proof that the defendant
was at or near the scene of the crime at or about the time it happened, along with evidence
of other suspicious circumstances may tend to connect the accused to the crime. 
Richardson v. State, 879 S.W.2d 874, 880 (Tex.Crim.App. 1993), cert. denied, 513 U.S.
1085, 115 S.Ct. 741, 130 L.Ed.2d 643 (1995). 

 However, appellant claims that proof of his DNA on the victim's halter top, neck, and
chin does not corroborate the accomplice testimony that he engaged in sexual intercourse. 
The lack of blood, vaginal secretions, and seminal fluid containing sperm cells on his
underwear or other clothing shows, he posits, that his DNA must have been transferred
by some bodily fluid other than semen. Further, he asserts, his explanation as to why his
pants were unfastened and why there was mud on his knee is uncontradicted, and
therefore that evidence is insufficient to corroborate the accomplice testimony. He relies
on Navejar v. State, 760 S.W.2d 786 (Tex.App.--Corpus Christi 1988, pet. ref'd), in support
of that proposition. 

 As already noted, the corroboration evidence does not have to prove the offense,
but only has to connect the defendant to the offense. Thus, the evidence does not have
to corroborate every element of the offense charged. Thomas v. State, 993 S.W.2d 392,
393 (Tex.App.--Eastland 1999, no pet.); see also Holladay v. State, 709 S.W.2d 194, 199-202 (Tex.Crim.App. 1986). Furthermore, the holding in Navejar is distinguishable because
the court in that case relied on the fact that the only corroborating evidence was the
defendant's presence at the scene of the crime and there was no evidence of direct
contact between the defendant and the accomplice witness, who were involved in a drug
transaction. Navejar, 760 S.W.2d at 788. In this instance, there is DNA evidence of direct
contact between appellant and the victim. More specifically, DNA was found on the
victim's halter top, neck and chin, and she testified that one or more persons ejaculated
on her face. Moreover, although appellant's explanation as to the condition of his clothing
at the time of his arrest is not directly contradicted, there is also evidence that several of
the men had mud or dirt on one or both knees and their pants were unfastened at the time
of their arrest, which reflects on the credibility of appellant's explanation. One of the
chemists testified that if a male vaginally or anally penetrated a female, put on his clothes,
did not shower, and was arrested within 30 minutes, it is likely there would be semen or
body fluids on that person's clothes which were not found on appellant. However, another
chemist stated that the presence of such evidence was only a possibility. We believe the
cumulative weight of the evidence is sufficient corroboration of the accomplice testimony. 
Appellant's first issue is overruled. 

 In his second and third issues, appellant argues the evidence is legally and factually
insufficient to support his conviction under paragraphs one and two of the indictment
because it does not show that appellant placed the victim in fear that serious bodily injury
or death would be imminently inflicted on her. The gist of appellant's argument is that
because the victim testified that he did not say one word to her and because she does not
speak Spanish and he does not speak English, he did not verbally threaten her. 
Furthermore, the physical acts committed were only those commonly associated with a
sexual assault, and even if the accomplice testimony is believed, the only evidence against
appellant is that he got on top of the victim and had intercourse with her. Even though the
victim testified that she was told that if she did not stop yelling, her throat would be cut and
that threat caused her to fear for her life, appellant urges there is no evidence that he
made or even had knowledge of that threat. 

 The standard by which we review the legal sufficiency of the evidence is whether,
after reviewing the evidence in the light most favorable to the prosecution, any rational trier
of fact could have found the essential elements of the crime beyond a reasonable doubt. 
Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). 
Under a factual sufficiency review, we must review all of the evidence without the prism
of in the light most favorable to the prosecution and determine whether the verdict is so
against the weight of the evidence as to be clearly wrong and manifestly unjust. Clewis
v. State, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). The charge allowed the jury to find
appellant guilty if he acted alone or with others as a party by either placing the victim in
fear of imminent serious bodily injury or death or acting in concert with Lopez or Flores
during the course of the same criminal episode. The jury returned a general verdict of
guilt.

 A person is criminally responsible as a party to an offense if it is committed by his
own conduct or by the conduct of another for which he is criminally responsible. Tex. Pen.
Code Ann. § 7.01(a) (Vernon 1994). A person is criminally responsible for the offense
committed by the conduct of another if he acts with intent to promote or assist the
commission of the offense and solicits, encourages, directs, aids, or attempts to aid the
other person to commit the offense. Id. § 7.02(a)(2). In determining the sufficiency of the
evidence under the law of parties, we must examine the events before, during, and after
the commission of the offense, and may rely on actions of appellant which show an
understanding and common design to commit the offense. Burdine v. State, 719 S.W.2d
309, 315 (Tex.Crim.App. 1986), cert. denied, 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d
779 (1987). The evidence is sufficient when the actor is physically present at the
commission of the offense and encourages the commission by words or other agreement. 
Id. 

 The State does not argue that there is evidence that appellant, either acting alone
or as a party, placed the victim in fear of imminent serious bodily injury or death. However,
the State argues that if the evidence is sufficient to establish that appellant acted either
as a principal or party in concert with Lopez or Flores during the course of the same
criminal episode, then it is not necessary for us to make a determination as to the victim's
fear of serious bodily injury or death. While we agree that there is no evidence that
appellant made a threat to the victim or had knowledge that one was made, we also agree
with the State that since the jury returned a general verdict, if the evidence is sufficient to
support a guilty verdict under any of the allegations, the verdict will be upheld. Rabbani
v. State, 847 S.W.2d 555, 558 (Tex.Crim.App. 1992), cert. denied, 509 U.S. 926, 113 S.Ct.
3047, 125 L.Ed.2d 731 (1993). 

 A person commits an aggravated sexual assault if he acts in concert with another
who engages in the conduct directed toward the same victim and occurring during the
course of the same criminal episode. Tex. Pen. Code Ann. § 22.021(a)(2)(A)(v) (Vernon
Supp. 2002). There was evidence that, before the commission of the offense while still in
the car, several of the men talked about raping the victim, although appellant claims he
thought these comments were a joke. Padilla testified that Lopez raped the victim
vaginally and Flores raped her anally. Padilla also testified that appellant raped the
victim. (1) Appellant himself testified both Flores and Lopez raped her vaginally, but denied
he had done so. However, it is uncontroverted that appellant was present while those
events were taking place. There is also evidence that at least one unidentified person
ejaculated on the victim's face, and appellant's DNA was found on her neck and chin. 
Lopez's DNA was also found on her forehead, chest, and chin. Additionally, Flores's boxer
shorts and jeans showed DNA of the victim. Positive tests for the presence of seminal fluid
were also found on Lopez's jeans and Flores's underwear and jeans. 

 Appellant claimed not to know whether the sexual intercourse was without consent,
even though he observed N. R. escape from the car while yelling and saw the victim
attempt to escape, but someone pulled her back. He also saw one of the other men grab
the victim and throw her to the ground, and someone covered her eyes. After the
commission of the offense, the men in the car were arrested and were observed with mud
or dirt on their knees or other clothes, including appellant, and appellant's pants were
unfastened. Under these facts, the trier of fact could have found that appellant acted in
concert with Flores and Lopez in penetrating the sexual organ of the victim, and that
finding is not manifestly unjust. Any conflicts in the evidence were within the province of
the jury to resolve. Appellant's second and third issues are overruled.

 In his fourth issue, appellant claims there is no evidence to support his conviction
for aggravated sexual assault under paragraph four of the indictment because there is no
evidence that appellant assaulted the victim anally. As already discussed, even if there
is no evidence that appellant himself placed his sexual organ in the victim's anus, there
is evidence that appellant vaginally assaulted the victim and acted in concert with Flores
and Lopez in their assaults. The sufficiency of that evidence alone will uphold the
judgment. Appellant's fourth issue is overruled.

 Finally, appellant complains that the evidence is factually insufficient to support his
conviction for aggravated sexual assault under paragraph three of the indictment because
the evidence is so weak that the verdict is manifestly unjust. We have previously recited
the testimony that appellant, Flores, and Lopez all vaginally raped the victim during the
same criminal episode, and we decline to hold that any jury finding that appellant acted in
concert with Flores and Lopez is clearly wrong. Appellant's fifth issue is overruled.

 Having overruled all of appellant's issues, we affirm the judgment of the trial court.


 John T. Boyd

 Chief Justice


Do not publish. 

 

 

 
1. Even though Padilla could not say if appellant entered the victim, it has been held
that any contact which results in pushing aside the labia constitutes penetration, even if
the vaginal canal is not entered. Vernon v. State, 841 S.W.2d 407, 409 (Tex.Crim.App.
1992). 



0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:2;
 font-size:13.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 mso-bidi-language:EN-US;}
h3
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 3 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:3;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 mso-bidi-language:EN-US;}
h4
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 4 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:4;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-style:italic;}
h5
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 5 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:5;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 mso-bidi-language:EN-US;
 font-weight:normal;}
h6
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 6 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:6;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 mso-bidi-language:EN-US;
 font-weight:normal;
 font-style:italic;}
p.MsoHeading7, li.MsoHeading7, div.MsoHeading7
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 7 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:7;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoHeading8, li.MsoHeading8, div.MsoHeading8
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 8 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:8;
 font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 mso-bidi-language:EN-US;}
p.MsoHeading9, li.MsoHeading9, div.MsoHeading9
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 9 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:9;
 font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoFootnoteText, li.MsoFootnoteText, div.MsoFootnoteText
 {mso-style-priority:99;
 mso-style-link:"Footnote Text Char";
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoHeader, li.MsoHeader, div.MsoHeader
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Header Char";
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 tab-stops:center 3.25in right 6.5in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoFooter, li.MsoFooter, div.MsoFooter
 {mso-style-priority:99;
 mso-style-link:"Footer Char";
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 tab-stops:center 3.25in right 6.5in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoCaption, li.MsoCaption, div.MsoCaption
 {mso-style-noshow:yes;
 mso-style-priority:35;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 mso-pagination:widow-orphan;
 font-size:9.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-weight:bold;}
span.MsoFootnoteReference
 {mso-style-priority:99;
 vertical-align:super;}
span.MsoEndnoteReference
 {mso-style-noshow:yes;
 mso-style-priority:99;
 vertical-align:super;}
p.MsoEndnoteText, li.MsoEndnoteText, div.MsoEndnoteText
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Endnote Text Char";
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoTitle, li.MsoTitle, div.MsoTitle
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:15.0pt;
 margin-left:0in;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpFirst, li.MsoTitleCxSpFirst, div.MsoTitleCxSpFirst
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpMiddle, li.MsoTitleCxSpMiddle, div.MsoTitleCxSpMiddle
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpLast, li.MsoTitleCxSpLast, div.MsoTitleCxSpLast
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:15.0pt;
 margin-left:0in;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoSubtitle, li.MsoSubtitle, div.MsoSubtitle
 {mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Subtitle Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 mso-bidi-language:EN-US;
 font-style:italic;}
a:link, span.MsoHyperlink
 {mso-style-priority:99;
 color:blue;
 text-decoration:underline;
 text-underline:single;}
a:visited, span.MsoHyperlinkFollowed
 {mso-style-noshow:yes;
 mso-style-priority:99;
 color:purple;
 mso-themecolor:followedhyperlink;
 text-decoration:underline;
 text-underline:single;}
p.MsoAcetate, li.MsoAcetate, div.MsoAcetate
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Balloon Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoNoSpacing, li.MsoNoSpacing, div.MsoNoSpacing
 {mso-style-priority:1;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-parent:"";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraph, li.MsoListParagraph, div.MsoListParagraph
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpFirst, li.MsoListParagraphCxSpFirst, div.MsoListParagraphCxSpFirst
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpMiddle, li.MsoListParagraphCxSpMiddle, div.MsoListParagraphCxSpMiddle
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpLast, li.MsoListParagraphCxSpLast, div.MsoListParagraphCxSpLast
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoQuote, li.MsoQuote, div.MsoQuote
 {mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Quote Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:black;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoIntenseQuote, li.MsoIntenseQuote, div.MsoIntenseQuote
 {mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Intense Quote Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:.65in;
 margin-bottom:14.0pt;
 margin-left:.65in;
 line-height:115%;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD .5pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleEmphasis
 {mso-style-priority:19;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:gray;
 font-style:italic;}
span.MsoIntenseEmphasis
 {mso-style-priority:21;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleReference
 {mso-style-priority:31;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 text-decoration:underline;
 text-underline:single;}
span.MsoIntenseReference
 {mso-style-priority:32;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 letter-spacing:.25pt;
 font-weight:bold;
 text-decoration:underline;
 text-underline:single;}
span.MsoBookTitle
 {mso-style-priority:33;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 letter-spacing:.25pt;
 font-weight:bold;}
p.MsoTocHeading, li.MsoTocHeading, div.MsoTocHeading
 {mso-style-noshow:yes;
 mso-style-priority:39;
 mso-style-qformat:yes;
 mso-style-parent:"Heading 1";
 mso-style-next:Normal;
 margin-top:24.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 mso-bidi-language:EN-US;
 font-weight:bold;}
span.Heading1Char
 {mso-style-name:"Heading 1 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 1";
 mso-ansi-font-size:14.0pt;
 mso-bidi-font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 font-weight:bold;}
span.Heading2Char
 {mso-style-name:"Heading 2 Char";
 mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 2";
 mso-ansi-font-size:13.0pt;
 mso-bidi-font-size:13.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading3Char
 {mso-style-name:"Heading 3 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 3";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading4Char
 {mso-style-name:"Heading 4 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 4";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.Heading5Char
 {mso-style-name:"Heading 5 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 5";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;}
span.Heading6Char
 {mso-style-name:"Heading 6 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 6";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 font-style:italic;}
span.Heading7Char
 {mso-style-name:"Heading 7 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 7";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.Heading8Char
 {mso-style-name:"Heading 8 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 8";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;}
span.Heading9Char
 {mso-style-name:"Heading 9 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 9";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.TitleChar
 {mso-style-name:"Title Char";
 mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Title;
 mso-ansi-font-size:26.0pt;
 mso-bidi-font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;}
span.SubtitleChar
 {mso-style-name:"Subtitle Char";
 mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Subtitle;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 font-style:italic;}
span.QuoteChar
 {mso-style-name:"Quote Char";
 mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Quote;
 color:black;
 font-style:italic;}
span.IntenseQuoteChar
 {mso-style-name:"Intense Quote Char";
 mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Intense Quote";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
p.NewDocument, li.NewDocument, div.NewDocument
 {mso-style-name:"New Document";
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;
 mso-bidi-language:EN-US;}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.EndnoteTextChar
 {mso-style-name:"Endnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Endnote Text";
 mso-bidi-language:EN-US;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 mso-bidi-language:EN-US;}
span.pmterms11
 {mso-style-name:pmterms11;
 mso-style-unhide:no;
 color:black;
 font-weight:bold;
 font-style:normal;}
span.GramE
 {mso-style-name:"";
 mso-gram-e:yes;}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:Arial;
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:Arial;}
 /* Page Definitions */
 @page
 {mso-footnote-separator:url("07-09-0171-CR%20%20Opinion_files/header.htm") fs;
 mso-footnote-continuation-separator:url("07-09-0171-CR%20%20Opinion_files/header.htm") fcs;
 mso-endnote-separator:url("07-09-0171-CR%20%20Opinion_files/header.htm") es;
 mso-endnote-continuation-separator:url("07-09-0171-CR%20%20Opinion_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-title-page:yes;
 mso-footer:url("07-09-0171-CR%20%20Opinion_files/header.htm") f1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
-->








NO. 07-09-0171-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL C

 

 DECEMBER 10, 2010



 

 



 

 

KEVIN CECIL MAEDA, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 

 



 

 FROM THE 47TH DISTRICT
COURT OF RANDALL COUNTY;

 

NO. 19,955-A; HONORABLE HAL MINER, JUDGE



 

 



 

Before QUINN, C.J., and HANCOCK and
PIRTLE, JJ.

 

 

MEMORANDUM OPINION

            Appellant, Kevin
Cecil Maeda, was convicted by a jury of possession of a controlled substance
(methamphetamine) in an amount of less than one gram[1] and sentenced to two years
confinement in a state jail facility.  On
appeal, he asserts the evidence was legally and factually insufficient.  We affirm. 
 

Background

            On August
20, 2008, a Randall County Grand Jury indicted Appellant for intentionally and
knowingly possessing a controlled substance, methamphetamine, in an amount by
aggregate weight, including any adulterants and dilutants, of less than one
gram.

            At trial, Deputy Marcus Woods of the
Randall County Sheriff's Office testified that, in the early morning hours of
May 12, 2008, he spotted Appellant and Jimmy Flores sitting in Appellant's
pickup parked at an Amarillo chipping site. 
When Deputy Woods approached Appellant, he was overwhelmed by the odor
of marijuana coming from inside the pickup's cab.  He observed Appellant's eyes were very red
and his speech was slurred.  Deputy Woods
asked Appellant if there was anything illegal in the pickup.  Appellant pulled the ashtray from the
dashboard, handed it to Deputy Woods through the driver's side window, and told
the Deputy he had marijuana.  

            Deputy Woods asked Appellant to exit
the pickup and, as he came out, a glass pipe fell out of his lap onto the
ground.  Deputy Woods identified the pipe
as the type of pipe used to smoke methamphetamine.[2]  He handcuffed Appellant and searched his
pockets where he found a cigarette box containing regular cigarettes and a
rolled marijuana cigarette.  He then
placed Appellant in the backseat of his patrol car.  Deputy Levi Randall, a deputy-in-training who
accompanied Deputy Woods, searched Flores and found nothing illegal on his
person.  Deputy Randall escorted Flores
to the backseat of the patrol car where the two men were advised of their Miranda rights.[3]

            During questioning, Appellant
indicated there was more marijuana in the pickup.  After Deputy Woods removed Appellant from the
patrol car to assist him in locating the marijuana, Deputy Randall discovered a
crushed blue pill where Appellant had been sitting.  When Deputy Randall found the pill, Flores
told him that they should be concerned for Appellant's welfare.  Appellant was subsequently taken to a
hospital where he was examined in the emergency room. 

            When Deputy Woods searched
Appellant's pickup, he found some blue pills, later identified as Xanax, in an
empty cigarette box on the passenger's side of the pickup and marijuana in the glove
compartment.  In the console, accessible
to Appellant and Flores, he discovered a plastic baggie containing what was
later identified as .04 gram of methamphetamine.[4]  At the scene, neither Appellant nor Flores
would identify who owned the methamphetamine. 
Both men were placed under arrest.

            Jimmy Flores, Appellant's best
friend for fifteen years, testified for the defense.  He testified that Appellant operated a
landscaping business that specialized in tree trimming.  He also testified that Appellant owned the
pickup they were sitting in at the chipping site and normally drove the truck
in connection with his work.  The day
before the two men were arrested at the chipping site, Flores testified they
had driven from Amarillo to Pampa, Texas, with four climbers and three grounds men
where they completed three to four jobs. 
Flores testified that Appellant drove his truck and his employees shared
two other trucks.  He testified that he
and Appellant had smoked three or four marijuana cigarettes that day and
Appellant told him he had taken a Xanax pill. 
He did not see Appellant use any methamphetamine.    

            Flores testified that early the next
morning he and Appellant were at the Amarillo chipping site to drop off some
limbs.  They had been smoking marijuana
for about five minutes when the deputies arrived.  He testified the pickup they were sitting in
had been driven by four or five others the day before while they were
working.  He also testified that the Xanax
pills and methamphetamine were not his drugs. 
He further denied ownership of the pipe which he testified was used to
smoke methamphetamine or crack cocaine. 
He opined that the pipe was not suitable for smoking marijuana.

            At the conclusion of the testimony,
Appellant was found guilty by the jury of possessing less than one gram of
methamphetamine and sentenced to two years confinement.  This appeal followed.

Discussion

            As an
initial consideration, we note that Appellant contends the evidence is both
legally and factually insufficient to establish that he exercised care, custody
and control of the methamphetamine in question. 
After briefs were filed by both parties, the Court of Criminal Appeals held
that the only standard a reviewing court should apply in determining whether
the evidence in a criminal proceeding is sufficient to support each element of
the offense beyond a reasonable doubt is the legal sufficiency standard set
forth in Jackson v. Virginia.[5]  Brooks v. State, No. PD-0210-09, 2010 Tex.
Crim. App. LEXIS 1240, at *2 (Tex.Crim.App. Oct. 6, 2010).[6]  Accordingly, we need not address Appellant's
challenge to the factual sufficiency of the evidence.

            I.          Standard of Review

             In assessing the sufficiency of the evidence
to support a criminal conviction under the standard enunciated in Jackson, this Court considers all the
evidence in a light most favorable to the verdict and determines whether, based
on that evidence and reasonable inferences to be drawn therefrom, a rational
trier of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319,
33 S.Ct. 2781, 61 L.Ed.2d 560 (1979). 
See also Brooks, 2010 Tex.
Crim. App. LEXIS 1240, at *14.  When
conducting such a review, this Court is required to defer to the jury's role as
the sole judge of credibility of the witness and the weight to be given their
testimony.  Id. at *15.  See Dewberry
v. State, 4 S.W.3d 735, 740 (Tex.Crim.App.
1999).  

            Furthermore, to establish legal
sufficiency, "[e]ach fact need not point directly and independently to the
guilt of the defendant, as long as the cumulative force of the incriminating
circumstances is sufficient to support the conviction."  Hooper v. State, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007).  If, however, a rational jury would
necessarily entertain a reasonable doubt as to the defendant's guilt after
considering all the evidence, due process requires that we reverse and render a
judgment of acquittal.  Swearingen v. State, 101 S.W.3d 89, 95
(Tex.Crim.App. 2003) (citing Narvaiz v.
State, 840 S.W.2d 415, 423 (Tex.Crim.App. 1992), cert. denied, 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993)).        

            II.
        Applicable Law

            To support the verdict rendered in
this case, the State was required to prove that Appellant knowingly possessed a
controlled substance, to-wit: 
methamphetamine, in an amount of less than one gram.  To prove possession,
the State was required to show that Appellant (1) exercised "actual care,
custody, control, or management" of the substance and (2) knew the matter
possessed was contraband.  See § 481.115(b).  See
also Tex. Penal Code § 1.07(39) (West Supp. 2010); Poindexter v. State, 153 S.W.3d 402, 405-06 (Tex.Crim.App.
2005).  

            Where, as here, the accused does not
have actual possession of the controlled substance or exclusive possession of
the locale where the controlled substance was found, it cannot be concluded or
presumed that the accused had possession over the contraband unless there are
independent facts or circumstances that tend to connect or link[7] the accused to the knowing
possession of the contraband.  Poindexter, 153 S.W.3d at
406; Evans v. State, 202 S.W.3d 158,
161-62 (Tex.Crim.App. 2006).

Numerous nonexclusive factors have been recognized
as contributing to an evaluation of whether an accused is linked to the
contraband.  See Triplett v. State, 292 S.W.3d 205, 208 (Tex.App.--Amarillo
2009, pet. ref'd).  Those links include, but are not
limited to: (1) whether the contraband was in plain view or recovered from an
enclosed place; (2) whether the defendant was the owner of the premises or had
the right to possess or control the place where the contraband was found; (3)
whether the defendant was found in possession of a large amount of cash; (4)
whether the contraband was conveniently accessible to the defendant; (5)
whether the contraband was found in close proximity to the defendant; (6)
whether an odor of contraband was present; (7) whether the defendant possessed
other contraband when arrested; (8) whether the defendant possessed
paraphernalia to use the contraband; (9) whether paraphernalia to use the
contraband was available to or in plain view of the defendant; (10) whether the
physical condition of the defendant indicated recent consumption of the
contraband in question; (11) whether conduct by the defendant indicated a
consciousness of guilt; (12) whether the defendant made any incriminating
statements when arrested; (13) whether the defendant attempted to flee; (14)
whether the defendant made furtive gestures; (15) whether the defendant had a
special connection to the contraband; (16) whether the persons present gave
conflicting statements about relevant matters; (17) the quantity of the contraband
discovered; (18) whether the defendant was armed; (19) whether the defendant
was observed in a suspicious place under suspicious circumstances; (20) whether
the accused was familiar or had previous experience with drugs; and, (21)
whether any forensic evidence (e.g., fingerprints, DNA, etc.) connects the
defendant to the contraband or its container. 
See Evans, 202 S.W.3d at 162 n.12.  See also Triplett, 292 S.W.3d at 209; Figueroa v. State,
250 S.W.3d 490, 500 (Tex.App.--Austin 2008, pet. refd), cert. denied,
No. 08-7719, 2009 LEXIS 1276 (U.S. Tex. Feb. 23, 2009).  

            There is no set formula that an
appellate court can use to determine if there are sufficient links to support
an inference of knowing possession of drugs. 
Taylor v. State,
106 S.W.3d 827, 831 (Tex.App.--Dallas 2003, no pet.).  Each case must be examined according to its
own facts on a case-by-case basis; Roberson
v. State, 80 S.W.3d 730, 736 (Tex.App.--Houston [1st Dist.] 2002, pet.
ref'd), and the number of links is not as important as the combined logical
force of all the evidence tending to link the accused to the contraband.  Evans, 202 S.W.3d at 162, 166.

            III.        Analysis

            Viewing the
evidence in a light most favorable to the verdict, the evidence at trial showed
that at least seven links listed above were present.  Appellant owned the pickup where the
contraband was found and had the right to possess or control its contents.  He was also present when the search was
conducted, made incriminating statements when arrested, had other contraband in
his possession, possessed drug paraphernalia, and had been using drugs when he
was approached by Deputy Woods.  Further,
the methamphetamine was found inside the pickup's interior console which was
conveniently accessible to Appellant, and a pipe, identified by three witnesses
as a type of pipe used to smoke methamphetamine, fell from his lap as he exited
the pickup.  Furthermore, Flores
testified the pipe was not suitable for smoking marijuana and denied ownership
of the marijuana, Xanax pills, methamphetamine, and pipe.  

            This evidence sufficiently links
Appellant to the methamphetamine and establishes, to the requisite level of
confidence, that a rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Appellant's issue is overruled. 

Conclusion

            The trial
courts judgment is affirmed.   

 

                                                                                    Patrick
A. Pirtle

                                                                                          Justice  

 

Do not publish.











[1]See Tex. Health & Safety Code Ann. §
481.115(a), (b) (West 2010).  Throughout
the remainder of this opinion, provisions of the Texas Health and Safety Code
will be cited as "section ____" and/or "§ ____." 





[2]Bruce
Evans, a crime scene technician and lab analyst for the Randall County
Sheriff's Office, also testified that, based on his experience, the pipe was of
the type used to smoke methamphetamine. 





[3]Miranda v. Arizona, 384
U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).





[4]Roy
Murphy, manager of the Texas Department of Safety Regional Crime Laboratory,
identified the various substances found in Appellant's pickup and their
respective weight.





[5]Jackson v. Virginia, 443
U.S. 307, 335 S.Ct. 2781, 61 L.Ed.2d 560 (1979).





[6]Judge
Hervey delivered the Brooks opinion,
joined by Judges Keller, Keasler, and Cochran, and Judge Cochran delivered a
concurring opinion, joined by Judge Womack. 
Brooks, 2010
Tex. Crim. App. LEXIS 1240, at *1, *59. 
Although we are not bound by a
decision of four justices, Pearson v.
State, 994 S.W.2d 176, 177 n.3 (Tex.Crim.App. 1999), we read the combined
opinions of Judges Hervey and Cochran as abandoning factual sufficiency as an
evidentiary sufficiency standard of review distinct from legal sufficiency.





[7]The
Court of Criminal Appeals has recognized that the term "affirmative"
adds nothing to the plain meaning of "link" and now uses only the
word "link" to evaluate evidence of possession.  Evans
v. State, 202 S.W.3d 158, 161 n.9 (Tex.Crim.App. 2006).  A link is a fact or circumstance which
generates a reasonable inference that the defendant knew of the contraband's
existence and exercised control over it. 
Lair v. State, 265 S.W.3d 580,
600 (Tex.App.--Houston [1st Dist.] 2008, pet. ref'd).  The evidence demonstrating such links may be
direct or circumstantial.  Brown v. State, 911
S.W.2d 744, 747 (Tex.Crim.App. 1995).