**Opinion issued February 19, 2026**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-24-00210-CR

———————————

**TIMOTHY ERIC GULLEY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 268th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 22-DCR-101165**

---

## MEMORANDUM OPINION

Timothy Eric Gulley appeals from his conviction for aggravated robbery. Gulley argues we must reverse on two grounds.

First, he argues the State failed to introduce evidence corroborating the testimony of an accomplice who implicated him in the robbery. Article 38.14 of the

Texas Code of Criminal Procedure requires such evidence. But we reject his argument because the State introduced non-accomplice evidence that tends to connect Gulley to the aggravated robbery, satisfying Article 38.14.

Second, Gulley argues the trial court reversibly erred in admitting evidence that, he argues, was irrelevant and unduly prejudicial. Gulley did not preserve his evidentiary complaints for our review.

We affirm.

## BACKGROUND

### The Prosecution's Case

The State prosecuted Gulley for aggravated robbery with a deadly weapon. *See* TEX. PENAL CODE § 29.03(a)(2). The robbery took place at the Katy Mills Mall. There, another man, Isaihpeter Mwange, robbed a woman at gunpoint. The State alleged Gulley was guilty as a party to the offense in his role as the getaway driver. *See id.* §§ 7.01, 7.02(a)(2); *see also Vasquez v. State*, 389 S.W.3d 361, 363 (Tex. Crim. App. 2012) (affirming aggravated robbery conviction in case in which defendant was prosecuted as party to offense based on his role as getaway driver).

### Accomplice Trial Testimony

One of the State's principal witnesses at trial was Mwange, who agreed to testify against Gulley in the hope of receiving a more lenient charge or sentence for

his own role in the robbery. Per his agreement with the State, none of his testimony in this case could be used in a later trial against him for aggravated robbery.

Among other things, Mwange testified that he, his roommate, Clareesa Mosha-Brown, and Gulley agreed to rob someone (no one in particular, just someone). Gulley then drove them all to Katy Mills Mall in order to do so.

Based on Mwange's testimony, each of the three of them played a distinct role. Mwange was the gunman who would do the actual robbing. Gulley was the wheelman who would drive Mwange away from the scene of the crime afterward. Mosha-Brown's role was to coordinate with Mwange by cell phone as needed.

Per their roles, Mwange eventually identified a victim and robbed her at gunpoint. Mwange then exited the mall, calling Mosha-Brown for pick-up. Gulley picked Mwange up in the parking lot and drove away from the scene.

### The Operation and Arrests

On the day of the robbery, the Katy Police Department was conducting a retail-crime theft-prevention operation at the mall. Mwange's behavior aroused officers' suspicion, and their suspicion was confirmed when the robbery was reported shortly afterward. At least two members of the Department saw Gulley pick up Mwange and hurriedly drive away from the mall.

Law-enforcement officers pulled over Gulley, Mwange, and Mosha-Brown not long afterward, at which point officers arrested all three. The items that Mwange took from the victim in the robbery were in plain view inside the car.

## Jury Verdict and Appeal

The jury found Gulley guilty. Taking into account two prior felony convictions (one for another aggravated robbery and one for theft), the jury assessed Gulley's punishment at 50 years of confinement in prison. Gulley appeals.

## DISCUSSION

### I.      Article 38.14's independent-corroboration requirement is satisfied.

Relying on Article 38.14 of the Texas Code of Criminal Procedure, Gulley argues that his conviction cannot stand because the State failed to introduce evidence that connects Gulley to the offense apart from the testimony of an accomplice. Not so.

> **A.      Under Article 38.14, a conviction cannot rest on accomplice testimony unless the testimony is corroborated by non-accomplice evidence that tends to connect the defendant to the crime.**

Article 38.14 provides that "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX. CODE CRIM. PROC. art. 38.14.

4

In evaluating whether Article 38.14 has been satisfied, we disregard any accomplice testimony admitted at trial and examine the rest of the trial record "to see if there is any evidence that tends to connect the accused with the commission of the crime." *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008) (quoting *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001)). The evidentiary bar is not a high one: there must simply be "*some* non-accomplice evidence *tending to connect*" the accused to the crime. *Joubert v. State*, 235 S.W.3d 729, 731 (Tex. Crim. App. 2007) (emphasis in original); *see also Malone*, 253 S.W.3d at 257 ("no set amount of non-accomplice corroboration" is required; non-accomplice evidence "must simply link the accused in some way to the commission of the crime").

Our evaluation under Article 38.14 turns on the particular facts of the case before us. *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011). Both direct and circumstantial evidence may provide non-accomplice corroboration. *Id.*

We do not independently weigh the non-accomplice evidence. *Id.* Instead, we must view the evidence in the light most favorable to the verdict. *Brown v. State*, 270 S.W.3d 564, 567 (Tex. Crim. App. 2008). When non-accomplice evidence gives rise to conflicting views—one tending to link the accused to the crime and one that does not—we are instructed to defer to the jury's resolution of the conflict. *Smith*, 332 S.W.3d at 442; *see also Simmons v. State*, 282 S.W.3d 504, 509 (Tex. Crim.

5

App. 2009) (inquiry is not how appellate court would weigh the evidence but whether a rational juror could find that the non-accomplice evidence tends to connect accused to the crime).

**B.** **Two non-accomplice witnesses offered testimony that tends to connect Gulley to the aggravated robbery.**

Setting aside accomplice testimony, the jury heard testimony from two non-accomplice witnesses—Detective Lieutenant J. Stewart and Detective J. Darrehshoori—that the jury could have rationally found tended to connect Gulley to the aggravated robbery. Thus, Article 38.14's corroboration requirement is satisfied.

**1.** **Detective Stewart testified he saw Gulley pick up Mwange in a car soon after the robbery and hurriedly leave.**

On the day of the robbery, the Katy Police Department was conducting a retail-crime theft-prevention operation at Katy Mills Mall, and Stewart was assigned to it. During the operation, Stewart was contacted by Darrehshoori, who informed Stewart of suspicious activity: a man—later identified as Mwange—was leaving the mall "in a hurry carrying a woman's purse and shopping bag."

Based on Darrehshoori's description, Stewart located Mwange before he left the premises. Stewart then personally observed Mwange rendezvous with a car. Stewart testified that he saw "a small, brown color passenger car pull up—pull up to him hurriedly, almost kind of passed him up, like it was trying to pick him up in a hurry." Mwange got into the back seat of the car, which then drove away.

6

According to Stewart, the car "was traveling at a pretty decent speed through the parking lot" and "faster than most people" would be driving in the lot. Indeed, the car was traveling "faster than everyone else in the parking lot." The car's rate of speed and the way in which it initially passed Mwange, requiring him to reach out to grasp its doorhandle, stood out to Stewart as being "a little bit unusual."

Once Mwange had gotten into the car, Stewart said that the car's driver—later identified as Gulley—pulled away so near pedestrians that it came "extremely close to striking them, failing to stop for them" or to "yield the right-of-way to the pedestrians walking through the parking lot." At one point, pedestrians had to yield to the car to keep from being hit by it because Gulley did not stop for them.

Similarly, when the car exited the parking lot onto the roadway, Gulley did not "yield and slow down and look for oncoming traffic." Later, Gulley "just rolled right through" a stop sign without slowing "very much at all for the type of intersection" at issue and "the volume of cars" that were in the vicinity.

At this point, Stewart had only received Darrehshoori's report of suspicious activity; he did not yet know of the robbery. Even so, Stewart testified he knew something was afoot and told Darrehshoori so based on his observation of the car's departure, "I don't know what they've done, but they're trying to get out of here."

Shortly afterward, it was communicated to Stewart that an aggravated robbery had occurred. Law enforcement officers stopped Gulley's vehicle and detained

Gulley and the car's other two occupants—Mwange and Mosha-Brown (who the State also alleges is an accomplice but who did not testify at trial). The items obtained in the armed robbery by Mwange were in plain view inside the car.

Based on Stewart's personal observations—in particular, his observation of Gulley's "driving behavior" throughout this episode—Stewart opined that Gulley was involved in the robbery, in the role of "the getaway driver." This opinion was consistent with Stewart's experience with crimes involving multiple participants, in which each one has a distinct role, such as the getaway driver.

**2.  Detective Darrehshoori also testified he saw Gulley pick up Mwange in a car soon after the robbery and hurriedly leave.**

Darrehshoori is assigned to a police substation in the Katy Mills Mall. He led the retail-crime theft-prevention operation conducted on the day of the robbery.

Darrehshoori tailed Mwange as he left the mall and approached the car driven by Gulley. Like Stewart, Darrehshoori testified that Gulley drove so fast through the parking lot that he initially passed by Mwange as Mwange tried to get into the car. After Mwange got in, Gulley drove off, failing to yield for pedestrians.

In his work at the mall substation, Darrehshoori had already investigated "between 15 and 25" crimes involving getaway drivers. Based on his experience, he testified that Gulley's hurried pick-up of Mwange and the rate of speed at which Gulley was driving "is not normal for that mall" but "is normal for people that

8

typically commit crimes"—"the way that they pull up, jump in, and go." Like Stewart, Darrehshoori opined that the car appeared to be "a getaway vehicle."

### 3. The detectives' testimony tends to connect Gulley to the robbery by indicating that Gulley was a getaway driver.

In sum, two non-accomplice witnesses—both of whom testified based on their law-enforcement experience and personal observation of the events as they unfolded—opined that Gulley acted as the getaway driver in connection with the armed robbery committed by Mwange. In doing so, they relied on specific facts, which they conveyed to the jury. Both witnesses noted the hurried manner in which Gulley pulled up to pick up Mwange almost immediately after Mwange exited the mall. They noted that Gulley drove with such speed that Mwange had some momentary difficulty getting into the car. They also noted the car's relatively rapid departure afterward, at a rate of speed unusual for a mall parking lot and in disregard of pedestrian safety.

Mere presence at or near the scene of a crime around the time of its commission does not, standing alone, satisfy Article 38.14's corroboration requirement. *See Smith*, 332 S.W.3d at 443. But when proof of presence is combined with additional suspicious circumstances, this evidence "may tend to connect the accused to the crime so as to furnish sufficient corroboration to support a conviction." *Id.* One such additional suspicious circumstance is flight, from which a rational juror may infer consciousness of guilt. *See Archie v. State*, 340 S.W.3d 734,

9

737 (Tex. Crim. App. 2011) (flight from traffic stop several days after murder evinced consciousness of guilt for crime more serious than moving violation and thus was evidence connecting defendant to murder); *Passmore v. State*, 617 S.W.2d 682, 684–85 (Tex. Crim. App. [Panel Op.] 1981) ("Sufficient corroboration of the testimony of an accomplice to warrant a conviction may be furnished by the suspicious conduct of a defendant such as flight after a crime was committed."), *overruled in part on other grounds by Reed v. State*, 744 S.W.2d 112 (Tex. Crim. App. 1988); *see also Hernandez v. State*, 939 S.W.2d 173, 178 (Tex. Crim. App. 1997) (citing *Passmore* with approval and describing it as standing for the proposition that "evidence presented at trial which shows flight serves to corroborate accomplice testimony").

Another suspicious circumstance is association with the accomplice at or near the time when or the place where the crime took place—facts from which a rational juror may infer the accused's involvement. *See Cockrum v. State*, 758 S.W.2d 577, 581 (Tex. Crim. App. 1988) ("Evidence that a defendant was in the company of the accomplice at or near the time or place of a crime is proper corroborating evidence.").

Here, the non-accomplice witness testimony about Gulley's role as getaway driver is evidence that tends to connect him to the aggravated robbery by establishing both that (1) Gulley was in Mwange's company at or near the scene of the crime

10

around the time that it was committed, and (2) Gulley left the scene of the crime rapidly afterward. *See Passmore*, 617 S.W.2d at 684–85 (presence of accused in company of accomplice and flight after commission of crime may link defendant to crime); *see also DeBlanc v. State*, No. 01-17-00231-CR, 2018 WL 3384633, at *7 (Tex. App.—Houston [1st Dist.] July 12, 2018, no pet.) (mem. op., not designated for publication) (evidence that defendant fled in car from police after robbery at high rate of speed and disregarded traffic signal was one circumstance tending to connect him to robbery). Article 38.14's corroboration requirement is satisfied in this instance.

### 4. Gulley's counterarguments are without merit.

Gulley counters that these additional suspicious circumstances are also susceptible to more innocent explanations. For example, he argues that a rational juror could also find that he was simply in the wrong place at the wrong time, merely having agreed to give an acquaintance a lift without foreknowledge of the robbery. Perhaps this is so.

But Gulley's argument disregards the standard of review. In reviewing whether some non-accomplice evidence corroborates accomplice testimony for purposes of Article 38.14, we view the evidence in the light most favorable to the jury's verdict. *Brown*, 270 S.W.3d at 567. It is the jury's role to choose between two conflicting reasonable explanations of the evidence, one that tends to connect the

11

accused to the crime and another that does not. *Smith*, 332 S.W.3d at 442. We cannot second-guess the jury's resolution of this conflict. *See id.* ("The court of appeals improperly supplanted the jury's verdict with its own view of the evidence, offering alternative, seemingly innocent explanations in certain instances, in direct opposition to the jury's implicit determination in this case.").

Gulley also argues that the non-accomplice evidence must show that he knowingly participated in the crime before or during its commission, and that the non-accomplice evidence here only relates to his conduct after the aggravated robbery had already taken place and thus is insufficient for purposes of Article 38.14. But this misstates the law. To begin, the statute makes no such temporal distinction. It requires only "evidence tending to connect the defendant with the offense committed." TEX. CODE CRIM. PROC. art. 38.14. Thus, in arguing for a temporal distinction, Gulley asks us to impose a limitation on the statute's corroboration requirement that its words do not express. This we cannot do. *See Cockrell v. State*, 721 S.W.3d 448, 455 (Tex. Crim. App. 2025) (interpretation of unambiguous statute begins and ends with its text, unless this leads to absurdity, a narrow exception applicable only to results the Legislature could not possibly intend); *Mason v. State*, 663 S.W.3d 621, 629 (Tex. Crim. App. 2022) (an unambiguous statute means what its text expresses, and the courts cannot add to or subtract from its language).

Consistent with the statute's unqualified text, caselaw interpreting Article 38.14 instructs that events or conduct occurring after the commission of a crime may satisfy the corroboration requirement, just as events or conduct occurring before or during the commission of the crime may do so. *See Smith*, 332 S.W.3d at 445–47 (suspicious behavior before or after crime may satisfy corroboration requirement); *see also Lydic v. State*, No. 14-23-00918-CR, 2025 WL 1587760, at *5 (Tex. App.—Houston [14th Dist.] June 5, 2025, no pet.) (mem. op., not designated for publication) (citing *Smith* for this proposition); *Haynes v. State*, No. 11-11-00197-CR, 2013 WL 3089373, at *9 (Tex. App.—Eastland June 13, 2013, no pet.) (mem. op., not designated for publication) (same). Indeed, events and conduct occurring after the crime, standing alone, may be suspicious enough to provide sufficient corroboration in a given instance. For example, in *Brown* the Court of Criminal Appeals concluded that the testimony of the defendant's non-accomplice girlfriend about events after the crime—defendant's unusual behavior, his request for an alibi, and his admission to being present at the scene—was some evidence that tended to connect him to the crime. 270 S.W.3d at 567–58. And, as we have already discussed, it is settled that flight in particular, a circumstance that necessarily arises only after the crime, may furnish sufficient corroboration to satisfy Article 38.14. *Passmore*, 617 S.W.2d at 684–85; *accord Killough v. State*, 718 S.W.2d 708, 711 (Tex. Crim. App. 1986). Contrary to Gulley's contention, non-accomplice evidence need not

13

relate solely to events or conduct occurring before or during the commission of the crime to satisfy Article 38.14's requirement that accomplice testimony be independently corroborated.[1]

We overrule Gulley's first appellate issue.

## II. Gulley did not preserve his evidentiary complaints for appellate review.

Gulley argues the trial court abused its discretion by allowing Stewart and Darrehshoori to testify about (1) "jugging"—a form of targeted robbery in which the

---

[1] Gulley argues he could not be convicted as a party to the aggravated robbery unless the State proved he committed a culpable act before or during its commission. We agree. *See Gross v. State*, 380 S.W.3d 181, 188 (Tex. Crim. App. 2012) (defendant's conduct after crime is relevant to status as party to offense but is not sufficient; there also must be sufficient evidence of understanding or common scheme to commit crime). But this is immaterial. Gulley does not challenge the legal sufficiency of the evidence to support his conviction as a party to the offense. He only challenges whether non-accomplice evidence corroborates accomplice testimony as to his involvement in the robbery, as required by Article 38.14 of the Texas Code of Criminal Procedure. Whether the evidence is legally sufficient to sustain his conviction for aggravated robbery as a party to the offense is a separate and distinct issue from whether some non-accomplice evidence exists that tends to link him to the robbery in satisfaction of Article 38.14. *See Torres v. State*, 137 S.W.3d 191, 196 (Tex. App.—Houston [1st Dist.] 2004, no pet.) ("A challenge of insufficient corroboration is not the same as a challenge of insufficient evidence to support that verdict as a whole."); *see also Casanova v. State*, 383 S.W.3d 530, 538 (Tex. Crim. App. 2012) ("We have long held that corroborative evidence need not be legally sufficient in itself to establish a defendant's guilt."). Because Gulley does not challenge the legal sufficiency of the evidence as to his status as a party to the offense, we need not examine the record to ensure the evidence suffices to prove that he committed a culpable act before or during the robbery. That is not before us. But we note that Mwange testified that Gulley knowingly participated in the robbery from its outset, and criminal liability for the conduct of the primary actor—the robber—is not controversial under circumstances like these. *See Rodriguez v. State*, 521 S.W.3d 822, 828 (Tex. App.—Houston [1st Dist.] 2017, no pet.) ("Courts have repeatedly upheld convictions under the law of parties when the evidence establishes that the defendant participated in the commission of the offense by driving the getaway vehicle.").

14

perpetrators identify a victim in advance based on where she is coming from or going to, such as a bank or shopping center, and lay in wait—and (2) organized retail theft. He argues these topics are irrelevant and unduly prejudicial.

### A.   A party must object in the trial court to preserve error.

To preserve an error in the admission of evidence for appellate review, the defendant must timely object in the trial court, specifying the grounds for the objection unless they are apparent from context. *See* TEX. R. APP. P. 33.1(a)(1); TEX. R. EVID. 103(a)(1); *Lopez v. State*, 253 S.W.3d 680, 684 (Tex. Crim. App. 2008); *see also Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) (preservation requires that complaint made on appeal comport with complaint made at trial). Unless the defendant obtains a running objection to the evidence or a ruling on his objection in a hearing outside the jury's presence, the defendant must object each time the evidence is offered to preserve error. *Lopez*, 253 S.W.3d at 684.

### B.   At trial, Gulley did not make the required objections.

At trial, Gulley did not object to testimony about organized retail theft in general. Both Stewart and Darrehshoori testified about this topic without objection. Therefore, Gulley has not preserved this complaint for appellate review. *See* TEX. R. APP. P. 33.1(a)(1); TEX. R. EVID. 103(a)(1); *Lopez*, 253 S.W.3d at 684; *see also Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003) (record did not contain general objection to admission of any and all gang-related evidence, and

objection to two particular photographs did not amount to such, so that defendant did not preserve error apart from the objection he made to the two photographs).

Stewart testified about jugging, but Darrehshoori did not. Gulley objected when Stewart first referred to jugging. But Gulley only objected on the basis of relevance, not undue prejudice. And he did not renew his relevance objection when Stewart repeatedly referred to jugging later in his testimony. He did not obtain a running objection or a ruling in a hearing outside the presence of the jury. So Gulley likewise has not preserved this complaint for appellate review. *See Lopez*, 253 S.W.3d at 684.

We overrule Gulley's second appellate issue.

## CONCLUSION

We affirm the trial court's judgment.


Jennifer Caughey
Justice

Panel consists of Justices Guerra, Caughey, and Dokupil.

Do not publish. TEX. R. APP. P. 47.2(b).